**James S. STINSON, Petitioner-Appellant,**

v.

**Louis S. NELSON, Respondent-Appellee.**

**No. 74–2743.**

United States Court of Appeals, Ninth Circuit.

Nov. 3, 1975.

James S. Stinson, in pro. per.

William D. Keller, U. S. Atty., Los Angeles, Cal., for respondent-appellee.

## OPINION

Before TRASK and SNEED, Circuit Judges, and RENFREW,* District Judge.

PER CURIAM:

James Stinson, a prisoner in custody at the San Quentin State Prison in Tamal, California, appeals the denial of his application for a writ of habeas corpus which asserts he was taken against his will from the place of his former detention at a federal prison at Lompoc, California, to the state institution.

On July 8, 1968, petitioner was sentenced to commitment in the custody of the Attorney General for imprisonment for a period of 25 years. He had been found guilty in a jury trial of bank robbery, during the course of which he assaulted and put in jeopardy the life of one Maria Mendoza by the use of a shotgun.

Stinson was thereafter surrendered to California state authorities for trial on a charge of armed robbery. On October 10, 1968, he entered a plea of guilty to this charge. He was sentenced to a term of five years to life, the sentence to run concurrently with the sentence imposed by the federal court. Following sentence was returned to the custody of the federal marshal and to his federal term in federal penitentiary in Terre-Haute, Indiana. He was later transferred to a federal penal institution at Lompoc, California. On March 29, 1971, he was transferred from Lompoc to the San Quentin State Prison, without his consent. This petition for a writ of habeas corpus was filed on July 8, 1974.

In answer to the question on the habeas application form which requires the petitioner to state the grounds upon which he contends he is in custody illegally, he stated in substance that he was sentenced "to the federal prison for a federal crime" and not a state prison. He contends that having been first committed to a federal institution he is entitled to complete the service of his sentence there. He charges he is being falsely imprisoned "out of order" as a result of his present confinement in the state institution. He does not tell us the reason for the transfer, whether administrative, disciplinary or other.

In his brief, although not in his petition, Stinson complains of the inadequacy of his accommodations at San Quentin in comparison with those at Lompoc in the federal system and complains also of the disparity of wages in the two institutions. He tells us in his closing brief that he has not been able to appear before his Federal Parole Board, although in his petition he states that he has not yet become eligible for parole. As a result of the combined circumstances he asserts that he has sustained a grievous loss.

Because there was no response made by the respondent warden there is no clear indication of the official reason for the transfer from federal to state prison. However, in the brief filed by the government there is a statement that an

---

* Honorable Charles B. Renfrew, United States District Judge, for the Northern District of California, sitting by designation.

employee of the State of California at San Quentin revealed to the author of the brief in a telephone conversation that the transfer was pursuant to a letter from an Assistant Director of the Bureau of Prisons of the United States. This letter stated that "[t]he above named federal prisoner has been transferred to the California Department of Corrections, Sacramento, California, in order that he may serve his federal and state sentence [sic] concurrently. . ." (Government brief at 3). This information was not disputed by petitioner, who indicated in his reply brief that this was the first knowledge he had of this communication.

On the scanty record made by the petition alone, the district court denied the application with the following statement:

"Petitioner's sole complaint is that he is serving these concurrent sentences in state prison rather than in federal prison.

"It is clear that where concurrent state and federal sentences are being served, there is no constitutional or other right to serve the same in the prisons of either jurisdiction. So far as the federal prisoner is concerned, the place of service is within the discretion of the Bureau of Prisons, which may validly determine that the federal sentence should be served in a state prison. *U. S. v. Herb,* 436 F.2d 566 (6th Cir. 1971).

"No hearing is necessary or appropriate. Petitioner is entitled to no relief as a matter of law." C.T. at 17–18.

▮ The petition was brought as one for habeas corpus. If properly a case for relief by habeas corpus, a showing of exhaustion of state remedies must be made. 28 U.S.C. § 2254(b). Here, however, although the State of California has its own statutory provisions affording habeas corpus relief, Cal.Penal Code, section 1473 *et seq.,* the California court would be unable to enforce an order directing the Bureau of Prisons to accept the retransfer of a prisoner in state custody although serving both state and federal sentences. We therefore find that the state post conviction remedy is not available and that federal habeas corpus is appropriate.

▮ There is no question of the authority of the Attorney General to designate the place where one convicted of a federal crime shall serve his sentence, 18 U.S.C. § 4082(b), 28 C.F.R. ¶ 0.96(c), absent action which is arbitrary and capricious. *United States v. Myers,* 451 F.2d 402, 404 n. 3 (9th Cir. 1972). Likewise, we have consistently rejected allegations that nonconsensual transfers of prisoners were *per se* violative of either due process or equal protection rights. Such allegations, without more, do not state a claim for relief. *Hillen v. Director of Department of Social Service & Housing,* 455 F.2d 510 (9th Cir.), *cert. denied,* 409 U.S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (1972; *Duncan v. Madigan,* 278 F.2d 695 (9th Cir. 1960). However we have also held that transfers to penalize prisoners for their religious beliefs is unconstitutional, *Fajeriak v. McGinnis,* 493 F.2d 468 (9th Cir. 1974), and have been careful to note that we reserve opinion upon any general procedural rule involving the due process implications of nonconsensual transfers.[1]

▮ The only official suggestion given here for the transfer was to permit the state and federal sentences to be served concurrently. Thus the transfer worked to petitioner's advantage and not to harm him. *See Floyd v. Henderson,* 456 F.2d 1117 (5th Cir. 1972). There was no

---

1. We observe that the Supreme Court has granted certiorari, 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975) to consider the question presented, "Is prison inmate who is transferred within state from one maximum security institution to another without imposition of disciplinary punishment entitled under the Fourteenth Amendment's Due Process Clause to notice of reasons for transfer and opportunity to be heard?" *United States v. Montanye,* 505 F.2d 977 (2d Cir. 1974).

allegation that the transfer was punitive in nature or that it affected any good time credits that petitioner had or might acquire. We find here that the somewhat confusing allegations of appellant do not rise to such stature as to create a constitutional issue.

The judgment is affirmed.