**Martin Allen JOHNSON,**
**Plaintiff–Appellant,**

v.

**Robert MOORE, Superintendent,**
**Clallam Bay Corrections Center,**
**Defendant–Appellee.**

No. 89–35867.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 6, 1990.*

Decided Feb. 28, 1991.

As Amended on Denial of Rehearing
April 15, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Martin Allen Johnson, Sheridan, Or., pro se.

Douglas W. Carr, Asst. Atty. Gen., Olympia, Wash., for defendant-appellee.

Before TANG, NELSON and CANBY, Circuit Judges.

PER CURIAM:

Appellant Martin Allen Johnson appeals *pro se* the district court's entry of summary judgment in his civil rights action brought under 42 U.S.C. section 1983 against Robert Moore, the superintendent of the state correctional facility where Johnson was incarcerated. Johnson alleges a number of due process violations, as well as infringement of his rights under the first and eighth amendments. On the facts of this case, we find the due process, freedom of religion and eighth amendment claims to be meritless and affirm the district court as to those. We also hold that the prison's failure to provide inmates free photocopying does not violate his right of access to the courts. We reverse and remand, however, as to the first amendment claim arising from the "publishers only" rule's application to softcover books.

I

A district court's grant of summary judgment is reviewed *de novo*. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986).

II

Appellant alleges a number of due process violations. First, he claims that he was unlawfully denied a hearing before being placed on "cell lockdown." If this treatment were meted out as punishment, this would perhaps constitute a cognizable claim. This is not the case, however. Prison policy dictates that *all* inmates not working or attending classes be confined to their cells during the day. Because confinement to a prison cell does not violate in and of itself any recognized liberty interest of federal prisoners, no hearing was necessary before imposing "cell lockdown." *Cf. Board of Regents v. Roth*, 408 U.S. 564,

569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.")

■ Likewise, appellant was not entitled to a hearing prior to being transferred from federal to state prison. The Bureau of Prisons has authority to designate the place of confinement of federal prisoners. 18 U.S.C. section 3621(b) (superseding former 18 U.S.C. § 4082(b) which gave the Attorney General authority to place and transfer prisoners). Whether the Bureau acts under delegated power from the Attorney General in accord with former 18 U.S.C. § 4082(b) or the power now given to it by 18 U.S.C. § 3621(b), its discretion to designate a place of confinement is not materially affected. *Barden v. Keohane,* 921 F.2d 476 (3d Cir.1990). Furthermore, a nonconsensual transfer is not *per se* violative of either due process or equal protection rights. *Stinson v. Nelson,* 525 F.2d 728, 730 (9th Cir.1975). Because such allegations, without more, do not state a claim for relief, Johnson's claims must fail. *Id.*[1]

### III

■ Appellant also contends that the absence of a "paid chaplain [of his faith] on staff" at the prison violates his right to freedom of religion. While it is clear that inmates retain first amendment protections, we have previously held that the Constitution does not necessarily require prisons "to provide each inmate with the spiritual counselor of his choice." *Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir.1987). *See also Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). Prisons need only provide inmates with a "reasonable opportunity" to worship in accord with their conscience. *Id.* Mr. Johnson has not shown that the prison's failure to provide a Unitarian Universalist chaplain has denied him a "reasonable opportunity" to exercise his faith. Thus, appellee's failure to make a Unitarian Univer-

salist minister available to Johnson at the prison does not violate the latter's first amendment rights.

■ Appellant also contends that his first amendment rights were violated by appellee's failure to provide a special diet tailored to his "vegetarian belief." In order to state a valid free exercise claim, appellant must demonstrate that this belief is religious in nature. *Callahan v. Woods,* 658 F.2d 679, 683–684 (9th Cir.1981). While defining religious belief is often difficult, *id.,* there is no evidence before this court suggesting that Mr. Johnson's professed vegetarianism is rooted in his religious beliefs. Accordingly, we cannot hold in this case that the failure to provide vegetarian meals constitutes a first amendment violation.

### IV

■ Johnson also maintains that prison regulations requiring that inmates receive softcover books and magazines directly from the publisher infringe his first amendment rights. The Supreme Court has previously upheld the constitutionality of this "publisher only" policy as applied to hardcover books, in light of the "obvious security problem" presented, particularly with respect to the smuggling of contraband in the bindings. *Bell v. Wolfish,* 441 U.S. 520, 550, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979).

In *Pratt v. Sumner,* 807 F.2d 817, 819–20 (9th Cir.1987), we pointed out that the decision in *Wolfish* was based in part on the availability of alternative sources of reading material, including softcover materials available from *any* source. *See Wolfish,* 441 U.S. at 551–52, 99 S.Ct. at 1880–81. Indeed, in *Wolfish* the court of appeals had originally invalidated a broad "publishers only" rule similar to the one before us, but the prison authorities modified it after the court of appeals ruled. *See Pratt,* 807 F.2d at 819 (discussing *Wolfish* litigation). The modifications permitted hardcover materials to be received from bookstores as well as publishers, and softcover materials to be

---

1. Johnson also alleges a due process violation with respect to the disciplinary hearing at which his federal good time credits were taken away for failing to provide a urine sample for drug testing purposes. Because appellant fails to specify how the hearing provided inadequate due process, we cannot find merit in this claim.

received from any source. *Id.* In light of these alternative sources and a large prison library available for use by inmates, the Supreme Court upheld the hardcover "publishers, bookstores and book clubs only" rule. *Wolfish,* 441 U.S. at 549–52, 99 S.Ct. at 1879–81.

In *Pratt,* we reversed a judgment dismissing as frivolous a prisoner's challenge to a broad "publishers only" rule because there was, at that early stage of the litigation, no showing as to the adequacy of alternative sources of the legal information the prisoner sought. 807 F.2d at 820. Here, we also find insufficient grounds in the record to permit a conclusion that the prison's rule is constitutional as a matter of law. The rule clearly restricts the flow of information to the prisoner. We find nothing in the record beyond assertions in argument that security considerations necessitate the rule. Nor do we find any evidence regarding the extent and availability of reading material available to inmates in the prison library.

We analyze regulations affecting the sending of a publication to a prisoner under the reasonableness standard enunciated in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987) which held that a prison regulation impinging on inmates' constitutional rights must be upheld if it is reasonably related to legitimate penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989). *Turner* set forth a four part test for analyzing the reasonableness of such a regulation. 482 U.S. at 89–90, 107 S.Ct. at 2261–62. In determining reasonableness, relevant factors include: a) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral government interest, b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates, c) whether and the extent to which

the accommodation of the asserted right will impact the prison staff, inmates' liberty and prison resources, d) whether the regulation represents an "exaggerated response" to prison concerns in light of the ready availability of alternatives. *Id.* The record below is inadequate to evaluate the regulation in light of these factors.

We therefore reverse the summary judgment with regard to this claim, and remand for further proceedings.

## V

Appellant also contends that inadequacies in the breadth of legal materials provided and in the availability of the prison law library unlawfully denied him access to the courts. We note, to this end, that

> the [p]rison need not provide its inmates with a library that results in the best possible access to the courts. Rather, [it] ... must provide its inmates with a library that meets minimal constitutional standards.

*Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 856 (9th Cir.1985). In addition, we have recognized that

> the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used.

*Id.* at 858. More importantly, Mr. Johnson failed to demonstrate that these restrictions in any way handicapped his access to the courts.

■ In this case, we find that the prison's alleged lack of various titles of the United States Code does not contravene minimal constitutional standards. Mr. Johnson did not demonstrate that the omissions from the Code were substantial, that the equivalent information could not be obtained through alternative sources[2], or that the omissions obstructed his access to the courts in any way.

2. Specifically, the library has copies of Titles 18, 28, 36–37, and 42 of the United States Code Annotated (USCA), Supreme Court Reporters from 1960 to date, West's Federal Practice Digest 2nd and Federal Practice Digest 3rd, seven volumes of Federal Practice and Procedure relating to criminal law, Federal Reporter 2d from 1970 to date, Federal Supplement from 1970 to date, Federal Rules of Civil Procedure and Criminal Procedure, Shepards United States and Federal Citations, U.S. Law Week from 1985 to date, and numerous nutshells, treatises, and other materials on federal law and Washington law. (District Court Memorandum Order, October 3, 1989 at 6). We agree with the District Court that this collection meets or exceeds what is constitutionally required.

Appellant also argues that as an indigent inmate he has a constitutional right to unlimited free photocopying. A denial of free photocopying does not amount to a denial of access to the courts. *See Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir.1989) ("numerous courts have rejected any constitutional right to free and unlimited photocopying"). A right of access claim other than one alleging inadequate law libraries or alternative sources of legal knowledge must be based on an actual injury. *Id.* at 1171.

In this case, Johnson was provided free paper and carbon paper. Prison policy also allowed him to send materials to family and friends for photocopying. Paid copying was also available to Johnson at a rate of ¢20 a page, arguably a high rate for a prisoner of limited means.

Johnson can only state a claim for denial of access if he points to or alleges a specific "actual injury." *Id.* In response to the motion for summary judgment, Johnson stated that one dismissal on appeal for untimeliness was caused in part by lack of photocopying, but he did not substantiate that claim. Neither did he demonstrate how the lack of photocopying affected his timing, nor why carbon copying was inadequate, nor that the denial of photocopying in that instance was attributable to the defendant. Viewing the evidence in the light most favorable to Johnson, the non-moving party, there are no genuine issues of material fact that preclude summary judgment on this issue. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). We conclude that Johnson failed to demonstrate the actual injury to access necessary to establish a constitutional deprivation. *Sands v. Lewis*, 886 F.2d at 1169.

## VI

Finally, appellant claims that his exposure to second-hand cigarette smoke constitutes cruel and unusual punishment. Johnson's complaint arose because he was double-celled with a smoker. Although Johnson has submitted a great deal of documentation detailing the harmful effects of prolonged inhalation of secondary smoke, his argument for an eighth amendment violation is meritless. Despite a lack of medical substantiation for his claimed allergy, the prison authorities responded to Johnson's request by placing him in a single cell where he would not be exposed to a cellmate's smoking. Accordingly, there has been no showing of "deliberate indifference" to Johnson's needs as is required to establish an eighth amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).[3]

## VII

For the foregoing reasons, we affirm the grant of appellee's motion for summary judgment as to the due process, freedom of religion, court access, and cruel and unusual punishment claims. We reverse and remand, however, as to the first amendment claim concerning the constitutionality of an across-the-board "publishers only" rule.

AFFIRMED in part; REVERSED and REMANDED in part.

---

3. Appellant also contends that the prison's failure to provide him with educational or drug rehabilitation programs violated his eighth amendment rights. This claim is plainly without merit, as there is no constitutional right to rehabilitation. *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir.1985) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1254–55 (9th Cir.1982)). Nor does Mr. Johnson have a constitutional right to an education. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973).