**Martin Allen JOHNSON,**
**Plaintiff–Appellant,**

v.

**Robert MOORE, Superintendent,**
**Clallam Bay Corrections Center,**
**Defendant–Appellee.**

No. 89–35867.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 6, 1990 *.

Decided Oct. 9, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Martin Allen Johnson, pro se.

Douglas W. Carr, Asst. Atty. Gen., Olympia, Wash., for defendant-appellee.

Before TANG, NELSON and CANBY, Circuit Judges.

**PER CURIAM:**

Appellant Martin Allen Johnson appeals *pro se* the district court's entry of summary judgment in his civil rights action brought under 42 U.S.C. § 1983 against Robert Moore, the superintendent of Clallam Bay Corrections Center ("CBCC") in Washington state where Johnson was incarcerated. Since this appeal was filed, Johnson was transferred to a federal prison and is currently housed in Arizona. Thus, his claim for injunctive relief from the "publishers only" rule's application to softcover books and from the Clallam Bay's smoking policy is moot because Johnson no longer is subjected to those policies. Qualified immunity prevents the imposition of compensatory damages stemming from the "publishers only" rule or the Washington prison's smoking policy. We find the due process claims, the freedom of religion and eighth amendment claims to be meritless and affirm the district court as to those. We also hold that the prison's failure to provide appellant with free photocopying does not violate his right to access to the courts.

## I. Standard of Review

A district court's grant of summary judgment is reviewed *de novo. Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986).

## II. Due Process Allegations

▮ Appellant alleges a number of due process violations. First, he claims that he was unlawfully denied a hearing before being placed on "cell lockdown." If this treatment were meted out as punishment, this would perhaps constitute a cognizable claim. This is not the case, however. Prison policy dictates that *all* inmates not working or attending classes be confined to their cells during the day. Because confinement to a prison cell does not violate in and of itself any recognized liberty interest of federal prisoners, no hearing was necessary before imposing "cell lockdown." *Cf.*

*Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.")

▮ Likewise, appellant was not entitled to a hearing prior to being transferred from federal to state prison. The Bureau of Prisons has authority to designate the place of confinement of federal prisoners. 18 U.S.C. § 3621(b) (superseding former 18 U.S.C. § 4082(b) which gave the Attorney General authority to place and transfer prisoners). Whether the Bureau acts under delegated power from the Attorney General in accord with former 18 U.S.C. § 4082(b) or the power now given to it by 18 U.S.C. § 3621(b), its discretion to designate a place of confinement is not materially affected. *Barden v. Keohane,* 921 F.2d 476, 483 (3d Cir.1990). Furthermore, a nonconsensual transfer is not *per se* violative of either due process or equal protection rights. *Stinson v. Nelson,* 525 F.2d 728, 730 (9th Cir.1975). Because such allegations, without more, do not state a claim for relief, Johnson's claims must fail. *Id.*[1]

## III. Conditions of Confinement

▮ Johnson complains upon several counts about the conditions of confinement in CBCC. Before our first decision was rendered in this case, Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to CBCC, his claims for injunctive relief relating to CBCC's policies are moot. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

Johnson also requested money damages for his alleged injuries. We review the merits of the conditions of confinement issues in order to address the damages claims.

---

**1.** Johnson also alleges a due process violation with respect to the disciplinary hearing at which his federal good time credits were taken away for failing to provide a urine sample for drug testing purposes. Because appellant fails to specify how the hearing provided inadequate due process, we cannot find merit in this claim.

### A. Unitarian Minister and Vegetarian Diet

■ Appellant contends that the absence of a "paid chaplain [of his faith] on staff" at the prison violated his right to freedom of religion. While it is clear that inmates retain First Amendment protections, we have previously held that the Constitution does not necessarily require prisons "to provide each inmate with the spiritual counselor of his choice." *Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir.1987). *See also Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081, n. 2, 31 L.Ed.2d 263 (1972). Prisons need only provide inmates with a "reasonable opportunity" to worship in accord with their conscience. *Allen,* 827 F.2d at 569. Mr. Johnson has not shown that the prison's failure to provide a Unitarian Universalist chaplain denied him a "reasonable opportunity" to exercise his faith. Thus, appellee's failure to make a Unitarian Universalist minister available to Johnson at the prison did not violate the latter's First Amendment rights.

■ Appellant also contends that his First Amendment rights were violated by appellee's failure to provide a special diet tailored to his "vegetarian belief." In order to state a valid free exercise claim, appellant must demonstrate that this belief is religious in nature. *Callahan v. Woods,* 658 F.2d 679, 683–84 (9th Cir.1981). While defining religious belief is often difficult, *id.,* there is no evidence before this court suggesting that Mr. Johnson's professed vegetarianism is rooted in his religious beliefs. Accordingly, we cannot hold in this case that the failure to provide vegetarian meals constitutes a First Amendment violation.

### B. "Publishers Only" Rule for Receiving Softcover Books

■ Johnson also maintains that CBCC's regulations requiring that inmates receive softcover books and magazines directly from the publisher infringed his First Amendment rights. As with his other conditions of confinement claims, his claim for injunctive relief from this policy is moot.

■ His claim for damages is also preempted by the defendants' qualified immunity which was pleaded as an affirmative defense in answer to the complaint. Officials pleading qualified immunity are liable for damages only if the contours of the right they are alleged to have violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Supreme Court has previously upheld the constitutionality of this "publisher only" policy as applied to hardcover books, in light of the "obvious security problem" presented, particularly with respect to the smuggling of contraband in the bindings. *Bell v. Wolfish,* 441 U.S. 520, 550, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979). The law is less clear, however with regard to softcover books. In *Pratt v. Sumner,* 807 F.2d 817, 819–20 (9th Cir.1987), we pointed out that the decision in *Wolfish* was based in part on the availability of alternative sources of reading material, including softcover materials available from *any* source. *See Wolfish,* 441 U.S. at 551–52, 99 S.Ct. at 1880–81. Indeed, in *Wolfish* the court of appeals had originally invalidated a broad "publishers only" rule similar to the one before us, but the prison authorities modified it after the court of appeals ruled. *See Wolfish,* 441 U.S. at 548–50, 99 S.Ct. at 1878–80. The modifications permitted hardcover materials to be received from bookstores as well as publishers, and softcover materials to be received from any source. *Id.* In light of these alternative sources and a large prison library available for use by inmates, the Supreme Court upheld the hardcover "publishers, bookstores and book clubs only" rule. *Wolfish,* 441 U.S. at 549–52, 99 S.Ct. at 1879–81.

Although *Pratt* suggests that a softcover book "publishers only" rule should be scrutinized closely, it does not clearly establish the right to receive such materials from other sources. Because we cannot say "that in light of pre-existing law the unlawfulness" of denying access to softcover books from other parties is "apparent", defendants are entitled to prevail on their defense of qualified immunity.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Johnson's claim for damages must fail.

### C. Adequacy of the Law Library

■ Appellant also contends that inadequacies in the breadth of legal materials provided and in the availability of the CBCC law library unlawfully denied him access to the courts. We note, to this end, that

> the [p]rison need not provide its inmates with a library that results in the best possible access to the courts. Rather, [it] ... must provide its inmates with a library that meets minimal constitutional standards.

*Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 856 (9th Cir.1985). In addition, we have recognized that

> the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used.

*Id.* at 858. More importantly, Mr. Johnson failed to demonstrate that these restrictions in any way handicapped his access to the courts.

In this case, we find that the prison's alleged lack of various titles of the United States Code does not contravene minimal constitutional standards. Mr. Johnson did not demonstrate that the omissions from the Code were substantial, that the equivalent information could not be obtained through alternative sources[2], or that the omissions obstructed his access to the courts in any way.

■ Appellant also argues that as an indigent inmate he has a constitutional right to unlimited free photocopying. A denial of free photocopying does not amount to a denial of access to the courts.

*See Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir.1989) ("numerous courts have rejected any constitutional right to free and unlimited photocopying"). A right of access claim other than one alleging inadequate law libraries or alternative sources of legal knowledge must be based on an actual injury. *Id.* at 1171.

In this case, CBCC gave Johnson free paper and carbon paper. CBCC also allowed him to send materials to family and friends for photocopying. Additionally, paid copying was available to Johnson at a rate of 20¢ a page, arguably a high rate for a prisoner of limited means.

Johnson can only state a claim for denial of access if he points to or alleges a specific "actual injury." *Id.* In response to the motion for summary judgment, Johnson stated that one dismissal on appeal for untimeliness was caused in part by lack of photocopying, but he did not substantiate that claim. Neither did he demonstrate how the lack of photocopying affected his timing, nor why carbon copying was inadequate, nor that the denial of photocopying in that instance was attributable to the defendant. Viewing the evidence in the light most favorable to Johnson, the non-moving party, there are no genuine issues of material fact that preclude summary judgment on this issue. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). We conclude that Johnson failed to demonstrate the actual injury to access necessary to establish a constitutional deprivation. *Sands v. Lewis,* 886 F.2d at 1169. He is entitled to neither injunctive relief nor compensatory damages.

### D. Exposure to Second-hand Smoke in Prison

■ Finally, appellant claims that his exposure to second-hand cigarette smoke

---

2. Specifically, the library has copies of Titles 18, 28, 36–37, and 42 of the United States Code Annotated (USCA), Supreme Court Reporters from 1960 to date, West's Federal Practice Digest 2nd and Federal Practice Digest 3rd, seven volumes of Federal Practice and Procedure relating to criminal law, Federal Reporter 2d from 1970 to date, Federal Supplement from 1970 to date, Federal Rules of Civil Procedure and Criminal Procedure, Shepards United States and Federal Citations, U.S. Law Week from 1985 to date, and numerous nutshells, treatises, and other materials on federal law and Washington law. (District Court Memorandum Order, October 3, 1989 at 6.) We agree with the District Court that this collection meets or exceeds what is constitutionally required.

during the time when he was double-celled with a smoker at CBCC constituted cruel and unusual punishment. Despite a lack of medical substantiation for his claimed allergy to cigarette smoke, the prison authorities responded to Johnson's request by placing him in a single cell where he would not be exposed to a cellmate's smoking. During the pendency of this appeal, Johnson was transferred from CBCC to a federal facility in Arizona. Since he is no longer housed at CBCC, his claim for injunctive relief is moot.[3]

### IV. Conclusion

For the foregoing reasons, summary judgment with respect to the due process claims is affirmed. The claims for injunctive relief relating to Johnson's conditions of confinement: freedom of religion, court access and cruel and unusual punishment, are dismissed as moot. The grant of summary judgment from the money damages associated with the freedom of religion claims and the library and court access claims are affirmed. Qualified immunity bars the recovery of money damages stemming from the "publishers only" rule and CBCC's smoking policy.

AFFIRMED.

---

3. Additionally, the prison officials' qualified immunity, as discussed earlier, bars Johnson's claim for money damages.