**Ronald GUILMET, Plaintiff,**

v.

**Ron KNIGHT, Defendant.**

**No. CS–91–085–FVS.**

United States District Court,
E.D. Washington.

May 26, 1992.

Ronald D. Guilmet, pro se.

Pat L. DeMarco, Atty. Gen. Wash., Corrections Div., Olympia, Wash., for defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

VAN SICKLE, District Judge.

BEFORE THE COURT is the defendant's Motion for Summary Judgment (Ct. Rec. 25). The defendant is represented by Assistant Attorney General Pat L. DeMarco; the plaintiff is proceeding pro se. For the reasons set forth below, the motion is granted.

### I.

The plaintiff is incarcerated at the Washington State Penitentiary. The defendant is the Correctional Unit Supervisor for the unit in which the plaintiff is housed. In that capacity, he plays a significant role in cell assignments. (Affidavit of Ronald E. Knight (Ct. Rec. 31), at 2–4.)

Prior to January 16, 1991, the plaintiff (who does not smoke) had a cell to himself. On that date, an inmate who does smoke was assigned to his cell. (Civil Rights Complaint (Ct. Rec. 1), at 3.)

Approximately five days later, the plaintiff complained to a sergeant in his unit that his cellmate's smoking bothered him. The plaintiff was advised that he would be moved if he could find another inmate with whom he was compatible. Later that day, the plaintiff submitted an inmate's name. (Deposition of Ronald D. Guilmet (Ct. Rec. 27), at 25.)

Cell assignments are a particularly sensitive issue, because the safe and orderly operation of the unit is at stake. A number of factors are considered by the prison staff in deciding whether two inmates should be housed together. They include custody level, age, health, race, and counselor assignment. According to the defendant, these factors are a useful guide for determining the compatibility of inmates. (Knight Aff. at 3.)

Ultimately, the prison staff decided that the inmate first proposed by the plaintiff would not be compatible. Thus, the plaintiff's request to be transferred to that inmate's cell was denied. (Knight Aff. at 2.)

That night, the plaintiff filed a grievance with the shift lieutenant. (Guilmet Dep. at 26.)[1] The lieutenant decided the grievance did not constitute an emergency, and instructed the plaintiff to follow normal procedure. (Guilmet Dep. at 26–27.)

On January 27, 1991, the plaintiff submitted the name of a second inmate. His request to be transferred was approved, and he was moved to a new cell on January 31, 1991. His new cellmate does not smoke. (Knight Aff. at 2–3.)

The plaintiff went to "sick call" on January 29, 1991. He complained of burning eyes, a sore throat, and nausea. (Guilmet Dep. at 30–31.) Medicine was prescribed, and the symptoms disappeared within a week of his transfer to the new cell. (Guilmet Dep. at 30–31.) According to the plaintiff, he "hasn't had any problems since." (Guilmet Dep. at 30.)

### II.

To prevail on his motion for summary judgment, the defendant must demonstrate that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where, as here, no fact which is capable of affecting the outcome of the action is in dispute, the question is whether there is sufficient evidence from which a jury could return a verdict in the plaintiff's favor. Id. at 249, 106 S.Ct. at 2511. To answer that question, the Court must consider the burden which the plaintiff bears in a case such as this.

■ The Eighth Amendment's prohibition against cruel and unusual punishments has been extended to include prison condi-

---

1. Since the grievance was filed on January 24, 1991, it appears the plaintiff's first request was denied on that date.

tions which "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). However, to be cognizable, a claim based upon allegedly unconstitutional prison conditions must satisfy two requirements—one objective, the other subjective. *Wilson v. Seiter,* 501 U.S. ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

First, the harm complained of must be serious when considered in light of " 'contemporary standards of decency.' " *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)). Thus, the objective component of a prison conditions claim requires proof that the inmate has been denied " 'the minimal civilized measure of life's necessities.' " *Wilson,* 501 U.S. at ——, 111 S.Ct. at 2324 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399).

Second, the inmate must demonstrate that the official who is responsible for the conditions at issue acted "with a sufficiently culpable state of mind." *Id.* This subjective component is derived from the Eighth Amendment's requirement that when "the pain inflicted is not formally meted out *as punishment* by the statute or sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.* 501 U.S. at ——, 111 S.Ct. at 2325 (emphasis in original). To satisfy the subjective component, the conduct must be "wanton." *Id.* at ——, 111 S.Ct. at 2326. In the context of a prison conditions claim, that means the inmate must be able to show that the official acted with " 'deliberate indifference.' " *Wilson,* 501 U.S. at ——, 111 S.Ct. at 2325–26 (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291).

■ In this circuit, compelled exposure to environmental tobacco smoke (ETS) is "cruel and unusual punishment if it is at such levels and under such circumstances as to pose an unreasonable risk of harm to an inmate's health." *McKinney v. Anderson,* 924 F.2d 1500, 1502 (9th Cir.

1991) ("McKinney I"), *vacated and remanded sub nom., Helling v. McKinney,* —— U.S. ——, 112 S.Ct. 291, 116 L.Ed.2d 236 (1991), *reinstated on remand,* 959 F.2d 853 (9th Cir.1992). Thus, the allegation that prison officials have repeatedly denied an inmate's requests to be moved out of a cell occupied by a heavy smoker is sufficiently serious to constitute the objective component of an Eighth Amendment prison conditions claim. *McKinney v. Anderson,* 959 F.2d 853, 854 (9th Cir.1992) ("McKinney II").

■ Here, the plaintiff was housed with a smoker for just fifteen days. Furthermore, he was not confined to his cell around the clock. He worked in the prison's garment factory from 7:30 in the morning until 3:15 in the afternoon, five days per week. (Guilmet Dep. at 17–18, 21.) He was also permitted to leave his cell (at certain times each day) to go the dining hall, the dayrooms, or to recreation. In those areas, smoking is either prohibited or restricted to designated sites. (Guilmet Dep. at 24.) As a result, the Court cannot say that the plaintiff's exposure to environmental tobacco smoke posed an unreasonable risk to his health, much less that he was denied "the minimal civilized measure of life's necessities."

Nor can it be said that the defendant's conduct reflected a culpable state of mind. The plaintiff acknowledges that he first complained about his cellmate's smoking approximately five days after the inmate was assigned to his cell. (Guilmet Dep. at 25.) Within ten days, the plaintiff had been moved. Such a response does not constitute deliberate indifference. *Johnson v. Moore,* 926 F.2d 921, 925 (9th Cir. 1991) (no Eighth Amendment violation where prisoner placed in single cell so that he would not be exposed to cellmate's smoking), *superseded by,* 948 F.2d 517 (9th Cir.1991) (affirming summary judgment).

Moreover, the comparatively short delay which occurred was justified by the need to find an inmate with whom the plaintiff would be compatible. Since consideration of inmate compatibility is necessary to preserve prison security, the delay in moving

the plaintiff was not unreasonable. *See generally Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) (prison regulations are valid if "reasonably related to legitimate penological interests").

In answer to the question posed above, the Court concludes that a jury could not find in the plaintiff's favor in this case. He cannot prove that the harm complained of was sufficiently serious to constitute a constitutional violation, or that the defendant was deliberately indifferent to his predicament. Since he is unable to "make a showing sufficient to establish the existence of an essential element," one on which he will bear the burden of proof at trial, judgment must be entered against him. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

IT IS HEREBY ORDERED:

1. The defendant's Motion for Summary Judgment (Ct. Rec. 25) is granted.

2. The plaintiff's claims against the defendant are dismissed with prejudice.

IT IS SO ORDERED. The Clerk is hereby directed to file this Order; enter judgment accordingly; furnish copies to the plaintiff and counsel for the defendant; and close this case.