**Donald L. SNELLING, Plaintiff,**

v.

**Chase RIVELAND, et al., Defendants.**

**No. CS–96–163–LRS.**

United States District Court,
E.D. Washington.

Sept. 10, 1997.

Donald Snelling, Airway Heights, WA, pro se.

Colleen B. Evans, Asst. Atty. Gen., Olympia, WA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE

SUKO, United States Magistrate Judge.

**BEFORE THE COURT** is defendants' motion for summary judgment and dismissal, **Ct. Rec. 33.** Upon hearing without oral argument, plaintiff appeared *pro se,* and defendants were represented by Assistant Washington State Attorney General Colleen B. Evans. The parties have consented to proceed before the magistrate judge.

On April 16, 1996, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging defendants violated his constitutional rights when plaintiff received several mail rejection notices. Plaintiff asserts the mail rejection policies at the Washington State Penitentiary (WSP) regarding sexually explicit material violate his First Amendment Rights.

## BACKGROUND

Plaintiff is an inmate formerly housed at the WSP and now at the Airway Heights Corrections Center located in Airway Heights, Washington. At all relevant times to this action, plaintiff was incarcerated at WSP.

Defendants at the WSP applied Department of Corrections (DOC) Policy 450.100 and WSP Field Instruction 450.100 to reject sexually explicit materials, including magazines and personal letters written to plaintiff.

Defendants include WSP mail room machine operators Nancy Frost, Dennis Potts; WSP mail room Supervisor Sgt. Fred Warneka; WSP Superintendent Tana Wood; Associate WSP Superintendent Ronald Van Boening; Division of Prisons Director Tom Rolfs; and Chase Riveland, then Secretary of the Department of Corrections. Tom Rolfs is responsible for promulgating, interpreting, and ensuring enforcement of policies, rules, regulations and directives for all Division of Prisons (DOP) adult corrections facilities.

DOC Policy 450.100 was promulgated to establish procedures to govern and manage incoming and outgoing mail. Provisions of 450.100 define and set parameters with respect to sexually explicit materials which may be received by inmates,. and sets forth factors to determine what is appropriate for inmate viewing within an institution. One purpose of the policy was to establish objective criteria with respect to obscene and sexually explicit materials.

Prior to drafting the policy, the Department of Corrections retained two experts in the filed of psychology, Dr. Victor B. Cline and Dr. Bill Marshall, who provided professional advice on the effects of pornographic material. The DOC also obtained legal advice from the Washington State Attorney General's Office.

In late 1992, with the goal of maintaining the security of the institution, safety of inmates and staff, and rehabilitation of inmates, the Director of the Divisions of Prisons at the time, Jim Spalding, enacted DOC Policy 450.100. The language of the policy remains the same today.

DOC Policy 450.100 applies to all inmates incarcerated in all Washington Division of Prisons adult correctional facilities. The term "sexually explicit" refers to those written and/or graphic materials that depict one of the following:

1. Where one of the participants in the act is, or appears to be, non-consenting;

2. Where one of the participants appears to be forceful, threatening, or violent;

3. Where one of the partners is dominating one of the other participants and one of the individuals is obviously in a submissive role or one of the participants is degraded, humiliated, or willingly engages in behavior that is degrading or humiliating;

4. One of the participants is a child, or appears to be a child;

5. Where there is actual penetration, be it penile/vaginal-oral, penile-anal, or penile-vaginal; digital-anal, digital-vaginal; or insertion of any inanimate object in the vaginal or anal cavity, and the depiction in the context presented is deemed to be a threat to legitimate penological objectives;

6. Where any bodily excretory function is depicted;

7. Material depicting bestiality, sadomasochistic behavior, bondage; or

8. The material is reasonably deemed to be a threat to legitimate penological objectives.

Incoming mail which is deemed sexually explicit will not be delivered to the inmate. DOC Policy 450.100(A)(2)(j). The applicable Field Instruction, WSP 450.100, mirrors the definitions of the term "sexually explicit" found in the regulations.

The WSP mail room processes between 10,000 and 20,000 pieces of mail per day for 3,200 inmates and staff. All mail to WSP inmates is inspected by staff for consistency with policies, procedures, and regulations, and to determine the presence of contraband.

Inmate mail which is not consistent with the policies and procedures is rejected. Inmates who have mail rejected may appeal to the DOP Director. Defendant Potts estimates that he writes approximately 1,100 to 1,200 mail rejection notices each month.

On or about September 12 and September 29, 1995, plaintiff received letters from Sylvia Porter that were rejected by defendant Potts because they depicted penetration in violation of Policy 450,100.

On or about September 20 and September 26, 1995, plaintiff received incoming correspondence from Sylvia Porter that was rejected by defendant Frost because it depicted penetration in violation of Policy 450.100.

On or about September 25 and October 10, 1995, plaintiff received a copy of the November 1995 and December 1995 editions of *Genesis* magazine which were rejected because the contents violated Policy 450.100.

Plaintiff appealed the mail rejections. Plaintiff's appeals were personally reviewed by defendant Van Boening. Defendant Van Boening determined that the written correspondence violated the policy regarding sexually explicit materials. Further, defendant Van Boening informed plaintiff that those particular editions of *Genesis* has been previously rejected by the Division of Prisons.

Defendant Rolfs reviewed the November and December editions of *Genesis* magazines and determined that these editions contained material in violation of DOC 450.100. Defendant Rolfs also reviewed letters sent to plaintiff and found them "sexually explicit" as defined in policy 450.100.

As of March 31, 1995, DOC was responsible for the custody of 11,236 inmates. Of these, 2,713, or 24 percent, were in custody as a result of convictions for sex crimes. As of December 31, 1995, DOC was responsible for the custody of 11,757 inmates. Of this total, 2,827 inmates, or 24 percent, were incarcerated for sex crime convictions.

It is the responsibility of prison administrators to prevent sexual assault and/or harassment upon staff and inmates by other inmates. Unfortunately, inmates are victimized by sexual assaults from other inmates. Inmates at WSP have been caught engaging in consensual and non-consensual sex. Inmates have also been forced into performing fellatio on other inmates. Female staff have been targeted by inmates who have exposed themselves or masturbated.

A significant number of inmates at WSP have tested positive for the Human Immunodeficiency Virus (HIV) and hepatitis. Both of these diseases can be spread via contact with bodily fluids.

Defendant Van Boening reviewed inmate disciplinary reports for rule infractions involving sexual or sexually-related conduct during the time period of February 1994 to February 1995. During this one-year period, 68 serious infraction reports were written regarding this behavior. Three of the infractions were for rape. Twenty-six were for other sexually-related acts, including consensual sex between inmates. Four infraction reports were written for inmates exposing themselves to staff, and 12 infractions were for masturbating in front of staff, primarily female staff members.

During 1993, a total of 73 infractions were written for sexually related misconduct. Of those, seven involved inmates masturbating in front of female staff members, five involved inmates exposing themselves to staff members, and twenty-two involved other sexual acts, including consensual sex by inmates.

There is no blanket prohibition of any particular magazine or other publication. Each magazine and piece of correspondence is individually reviewed. If, after review, it is determined that a specific publication, such as a magazine, meet the criteria set forth in policy 450.100, defendant Rolfs directs that an electronic mail directive be sent to all superintendents of adult corrections facilities, advising them that a particular magazine edition violates policy and should be rejected.

WSP has an interagency agreement with the Washington State Library (WSL) concerning library services at DOC institutions. Under the agreement, selection of material and development of library collections lies with WSL staff. The agreement further provides that all WSL staff and volunteers working at DOC institutions must abide by all published DOC policies. If a DOC institution has a complaint about a particular publication, it must be submitted to the library branch manager. If a resolution cannot be reached, the complaint is forwarded to the WSL Assistant Director for Customer Services and the Director of the Division of Prisons. If necessary, the matter is forwarded to the State Librarian and to the Secretary of the Department of Corrections for resolution.

Pursuant to the WSL library agreement, which includes access to the Western Library Network, and the WSP permanent library collection, inmates have access to over two million publications.

## SUMMARY JUDGMENT STANDARD

█ The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner,* 780 F.2d 727 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there

are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 at 322–23, 106 S.Ct. at 2552–53.

## DISCUSSION

### A. First Amendment Claims

Plaintiff asserts defendants applied DOC Policy 450.100 and WSP Field Instruction 450.100 to reject sexually explicit materials in violation of his First Amendment rights. Plaintiff does not dispute that the letters and magazines rejected contained "sexually explicit" material as defined by policy 450.100. Rather, plaintiff claims that defendants have failed to show a reasonable penological interest in prohibiting sexually explicit materials. Further, plaintiff maintains that defendants offer no evidence to support the prohibition of written materials containing sexually explicit passages. Finally, plaintiff argues the policy is arbitrary because inmates can obtain publications containing sexually explicit material through the library system.

■The Supreme Court has articulated several principles applicable to prisoner claims alleging violations of constitutional rights. First, "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id.* Thus, prison inmates possess the right of free speech under the First and Fourteenth Amendments, including the right to receive publications. *Bell v. Wolfish*, 441 U.S. 520, 545, 550–51, 99 S.Ct. 1861, 1877–78, 1880–81, 60 L.Ed.2d 447 (1979); *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989); *Procunier v. Martinez*, 416 U.S. 396, 407–11, 94 S.Ct. 1800, 1808–10, 40 L.Ed.2d 224 (1974); *Pepperling v. Crist*, 678 F.2d 787, 791 (1982) ("[T]he blanket prohibition against receipt of the publications by any prisoner carries a heavy presumption of unconstitutionality."); *see also Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir.1987) (in absence of legitimate penological interests, prisoners retain First Amendment right to receive and read publications).

■ The Supreme Court also has clearly held that restrictions upon prisoners' constitutional rights are permissible, so long as those restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989). This standard reflects the view that prisoner administrators, and not the courts, should resolve difficult and complex questions of institutional operations. *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261–62. Further, the standard is necessary so that courts avoid becoming the ultimate arbiters of every administrative problem in correctional institutions. *Id.*[1]

■ The Court has set forth factors relevant to the determination of reasonableness, including: 1) whether a "valid, rational connection" exists between the prison regulation and a legitimate and neutral government interest; 2) whether alternative means of exercising the restricted constitutional right remain open to inmates; 3) the extent to which the accommodation of the asserted right will impact the prison staff and resources; and 4) whether the regulation is an "exaggerated response" to prison concerns in light of available alternatives. *Turner*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63; *Johnson v. Moore*, 926 F.2d 921, 924 (9th Cir.1991).

■ Although the standard enunciated by the Court in *Turner* reflects the deference owed to prison administrators, the Court did not intend for courts to simply rubberstamp the decision of prison officials. For example, the Court explains that "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2262. Thus, a court is required to closely examine whether a regulation is reasonably related to legitimate penological

---

1. Plaintiff argues that defendants cannot show that the materials are obscene or could incite violence. However, plaintiff enunciates the incorrect standard. Rather, the proper standard is whether prison administrators have a legitimate penological interest in banning such materials.

interests. With these principles in mind, the court proceeds to the challenged regulation.

### 1. Sexually Explicit Materials

Defendant Rolfs deemed sexually explicit letters written to plaintiff and several issues of *Genesis* magazine. Defendant Rolfs avers, based on his research of numerous studies, that inmates exposed to pornography become desensitized and require more and more graphic material which may ultimately result in acting out sexual fantasies. Because of the lack of physical relationships of choice in prison, there is an increased possibility that inmates who view sexually explicit material will engage in consensual and non-consensual homosexual sex, thereby increasing the spread of HIV, hepatitis and other sexually transmitted diseases.

Defendant Rolfs also avers that aggressive and predatory behavior, such as nonconsensual sex, sexual molestation, masturbation or exposing in front of staff, and inappropriate touching or writing to staff, endangers the lives and safety of staff and inmates. Furthermore, defendant Rolfs notes sexually explicit materials often portray women in dehumanizing and submissive roles which leads to disrespect for female correctional officers and other staff. Defendants have submitted several studies to support these assertions. Plaintiff fails to offer any evidence to discredit these justifications.

■ The court finds the objectives of security and rehabilitation are legitimate and reasonably related to the challenged regulation. *Thornburgh*, 490 U.S. at 415, 109 S.Ct. at 1882–83; *Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1974). The court notes that there is no blanket prohibition of certain publications or correspondence; rather, each issue is reviewed separately. Because prison administrators distinguish between publications on the basis of their potential implications for prison security and rehabilitation, they are "neutral." *Thornburgh*, 490 U.S. at 415–16, 109 S.Ct. at 1882–83. Plaintiff argues that the claimed justifications have only been cited with respect to visual rather than written material. However, a review of defendants'

facts show otherwise. *See* Defendants' Statement of Material Facts, Exs. 17, 24, 36.

■ Next, the court examines whether alternative means of exercising the asserted right remain open to inmates. The policy regarding sexually explicit materials is not a complete prohibition of materials of a sexual nature coming into the WSP. Inmates have alternative means of exercising their First Amendment rights, by receiving publications not deemed inappropriate in the prison setting. Further, plaintiff is not prohibited from receiving correspondence so long as it does not violate policy. It is not the burden of prison officials to disprove the availability of alternatives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987).

■ Third, the court addresses the impact an accommodation of plaintiff's asserted rights would have on staff, other inmates and prison resources. Defendants contend it is impossible to control who may view or read sexually explicit material once it enters a prison. Because many sex offenders are housed throughout the WSP, availability of sexually explicit materials has the potential of undermining the rehabilitation efforts of these offenders. Defendants assert the only way to control the flow of sexually explicit materials into a prison is to eliminate their entry at the source. Plaintiff fails to refute this assertion. As the *Turner* Court instructed, we should defer to the "informed discretion of corrections officials" where accommodating the right would have a significant "ripple effect" on prison staff. 482 U.S. at 90, 107 S.Ct. at 2262. Even if, as plaintiff argues, inmates can obtain sexually explicit materials through the library system, defendants do not allow or otherwise condone such occurrences. Rather, they appear to be the result of mistakes occurring in a system that oversees literally hundreds of thousands of publications.

■ Finally, the existence of obvious, easy alternatives which fully accommodate the inmates' rights at de minimis cost to valid penological interests may suggest that the regulation is unreasonable and an "exaggerated response" to prison concerns. On the

other hand, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner,* 482 U.S. at 90–91, 107 S.Ct. at 2262. Furthermore, prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. *Id.* Here, plaintiff has offered no evidence of alternatives which could be reasonably implemented at the WSP.

In the absence of any evidence to the contrary and on the basis of the record presented in this case, the court finds the regulation satisfies the reasonable relationship standard. Accordingly, **IT IS ORDERED** defendants' motion for summary judgment regarding sexually explicit materials is **GRANTED.**

### CONCLUSION

Defendants have shown a rational connection between WSP's prohibition of sexually explicit materials and the stated penological concerns. Furthermore, plaintiff failed to come forward with any evidence to support his First or Fourteenth Amendment violation claims. Based on the disposition of this matter, the court does not address defendants' assertions regarding lack of personal participation by several defendants and qualified immunity. Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment, **Ct. Rec. 33,** is **GRANTED. IT IS FURTHER ORDERED** plaintiff's First Amendment claim is **DISMISSED WITH PREJUDICE.** Judgment shall be entered in favor of defendants accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and an Order of Judgment, forward copies to plaintiff and counsel for defendants, and close the file.