Alan L. GLUTH, Thomas A. Rice, Donald K. Nelson, David M. Bandstra, Plaintiffs–Appellees,

v.

William E. KANGAS, Defendant,

and

Arizona Department of Corrections, Defendant–Appellant.

Alan L. GLUTH; Thomas A. Rice; Donald K. Nelson; David M. Bandstra, Plaintiffs–Appellees,

v.

ARIZONA DEPARTMENT OF CORRECTIONS, Defendant–Appellant.

Nos. 90–15735, 90–16593.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1991.

Memorandum Filed July 26 1991.

Opinion Dec. 23, 1991.

Thomas Dennis, Asst. Atty. Gen. (argued), and Lynne W. Abney, Asst. Atty. Gen. (on briefs), Phoenix, Ariz., for defendants-appellants.

M. Robert Dauber, Arizona State University, Law School Clinic, Tempe, Ariz., for plaintiffs-appellees.

Appeal from the United States District Court for the District of Arizona.

Before: BRUNETTI and RYMER, Circuit Judges, and ZILLY,* District Judge.

## ORDER

The request for publication in this case is GRANTED. The memorandum disposition filed July 26, 1991, 940 F.2d 668, is redesignated as an opinion, as authored by Judge Rymer.

_____
* The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

RYMER, Circuit Judge:

Inmates at the Arizona State Prison at Florence brought suit against the Arizona Department of Corrections under 42 U.S.C. § 1983 claiming that its policies concerning the prison law library denied them meaningful access to the courts. The district court granted summary judgment in favor of the plaintiff class and issued an injunction mandating certain changes in the operation of the library. The Department now appeals the district court's grant of summary judgment for the plaintiffs, the denial of its own motion for summary judgment, and various rulings concerning class certification (No. 90–15375). The Department also claims that the injunction exceeds constitutional standards (No. 90–16593). We affirm the district court in all respects.

## I. The Department's Motion for Summary Judgment

 The Department moved for summary judgment on the grounds that the inmates' claims were moot, relying exclusively on its post-litigation promulgation of a new access policy. As the Department conceded at oral argument, resting a summary judgment motion on the new policy alone was indeed "overreaching." It is well established that the mere voluntary cessation of alleged unlawful activity does not render those allegations moot. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir.1985). The new proposed policy only provided, in a conclusory declaration, that "reasonable" access would be afforded. This did not deprive the court of a justiciable controversy. Even assuming that the policy meets constitutional standards on its face, given the Department's history of allegedly denying access arbitrarily and the vagueness of the new policy, it cannot be said "with assurance" that there is no "reasonable expectation" that the alleged violations will recur. *Id.*

Moreover, the Department provided no *facts* to support its claim that the inmate access situation had changed at all. Because the policy did not "completely and irrevocably eradicate[ ] the effects of the alleged violation," the district court was not obligated to wait and see how the new policy worked out. *Id.* The inmates opposed the Department's motion with affidavits detailing deficiencies in library access, legal assistant and law library clerk training, and problems with the indigency standards; they also asserted that the new policy had not been implemented. The district court did not err in concluding that summary judgment for the Department, based entirely on the mere promulgation of a new policy, was not appropriate.

## II. The Inmates' Cross–Motion for Summary Judgment

In opposition to the inmates' cross-motion for summary judgment, the Department again relied solely on the argument that the new access policy rendered the claims moot. The Department adduced no other facts, and did not attempt to argue that a material issue of fact precluded summary judgment. We agree with the district court's observation that the Department's strategy "backfired."

The Department's new policy did not undermine any part of the factual record submitted in support of the inmates' motion for summary judgment. Because those facts remained uncontroverted and showed that unconstitutional conditions existed at the prison, the inmates were entitled to summary judgment on all three counts.

### A. Count I: Inmate Legal Assistant Training

 In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that the fundamental constitutional right of access to the courts requires that the state provide "adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. We have held that "[i]f the state denies a prisoner reasonable access to a law library, the state must provide that prisoner legal assistance." *Toussaint v. McCarthy*, 801 F.2d 1080, 1110 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

According to the inmates' undisputed statement of facts, the Department established no qualifications for legal assistants and provided no training for the position. An inmate's application to be a legal assistant will be approved if the inmate is able to read and write. "Dependence on untrained inmate paralegals as an alternative to library access does not provide constitutionally sufficient access to the courts." *DeMallory v. Cullen*, 855 F.2d 442, 447 & n. 3 (7th Cir.1988). *Bounds* requires the assistance of those "trained" in the law; the appearance of minimal capacity to assist other inmates alone plainly does not suffice.[1]

## B. Count II: Direct Library Access

■ Undisputed facts indicate that unreasonable restrictions prevent inmates from securing adequate access to the law library; the prison arbitrarily denies requests for library "turnouts" despite space availability; inmate requests for library access are lost or ignored; inmates are permitted insufficient time in the library; inmates are given inadequate notice of library turnouts; turnouts are scheduled so as to conflict with other activities; and inmates are arbitrarily removed from the library. Statistics also show that there is a one-in-four chance that an inmate's request for library access will be denied, even though the library is rarely full.

"The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library." *Lindquist*, 776 F.2d at 858. "Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Leeds v. Watson*, 630 F.2d 674, 676 (9th Cir.1980) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40

L.Ed.2d 224 (1974)). The undisputed facts show that the Department has not allowed inmates a reasonable amount of time in the law library and has a history of arbitrarily denying access.

■ It is the state's burden to provide meaningful access and to demonstrate that its chosen method is adequate. *Storseth v. Spellman*, 654 F.2d 1349, 1352 (9th Cir. 1981). The Department has not done so here.

## C. Count III: Indigency Policy

■ Under the Department's indigency policy, an inmate may apply for indigency classification if his prison account balance is less than $12 and his income from all sources during the previous thirty day period has not exceeded $12. We agree with the district court's conclusion that this policy, which according to uncontroverted facts forces inmates to choose between purchasing hygienic supplies and essential legal supplies, is "unacceptable."

The uncontroverted facts show that it costs at least $46 to purchase necessary personal items and legal supplies and that inmates must purchase hygiene items to avoid punishment under prison regulations. Thus, the inmates have demonstrated that the indigency policy's $12 threshold, which has been in effect since 1983 and has never been increased, fails to accommodate those inmates who have no money to purchase legal supplies when they are needed. *See Souder v. McGuire*, 516 F.2d 820, 824 (3d Cir.1975); *Temple v. Ellerthorpe*, 586 F.Supp. 848, 851 (D.R.I.1984). The district court properly concluded that the Department's indigency policy, which does not allow inmates to purchase required hygiene supplies as well as the legal supplies necessary to litigate their claims, is inconsistent

---

1. Contrary to the Department's assertion, Gluth's status as a legal assistant is irrelevant to the claim regarding "indirect" library access; when Gluth himself is in "lockdown" and is denied physical access to the library, like other inmates, he is entitled to the assistance of legal assistants trained in the law. Because Gluth set forth facts showing that he has been confined to his cell on several occasions, he can assert a claim challenging the adequacy of the legal training of inmate assistants.

with the constitutional requirements stemming from *Bounds*.[2]

### III. Class Certification Issues

The Department also challenges several rulings of the district court concerning class certification and the propriety of continuing the case as a class action. These contentions are without merit.

■ After a pretrial status conference at which both parties apparently agreed that the case should proceed as a class action, the district court entered an order finding that Fed.R.Civ.P. 23(a) had been met and provisionally certifying a class. After each party submitted a proposed class definition, the court adopted the inmates' proposal and issued an order defining the class.[3] The Department now contends that it never "agreed" that the case should proceed as a class action, and that the district court never conducted any factual investigation to determine whether Rule 23 was satisfied. In addition to the fact that the Department does not direct us to where in the record it ever objected to the district court's class certification order, "a party who does not provide the trial court with suggested amended or alternative findings on the issue to be reviewed on appeal is not in a favorable position to complain about their incompleteness." *Lindquist*, 776 F.2d at 857. We therefore see no reason to disturb the district court's decision to certify the class.

■ The Department also contends that the district court erred in denying its motion to decertify the class when Gluth was transferred out of the Central Unit of the Arizona State Prison at Florence. It is well established that once a class is certified, if the named plaintiff had a legitimate case at the time of certification, then his transfer does not moot the case. *Bell v. Wolfish*, 441 U.S. 520, 526 n. 5, 99 S.Ct. 1861, 1868 n. 5, 60 L.Ed.2d 447 (1978); *Lynch v. Dawson*, 820 F.2d 1014, 1016 (9th Cir.1987). This is especially true in prison litigation where the turnover of named representatives is potentially quite high due to frequent transfers or releases. Therefore, rather than dismiss the case and to assure the availability of one inmate prior to the case's conclusion, the district court properly added three new named plaintiffs.

### IV. The Scope of the Injunction

The Department challenges the scope of the relief provided in the district court's injunctions. "We will scrutinize the injunction[s] closely to make sure that the remedy protects the plaintiffs' constitutional rights and does not require more of state officials than is necessary to assure their compliance with the constitution. Within these parameters, we will defer to the district court." *Toussaint*, 801 F.2d at 1089.

#### A. Indigency Injunction

■ The Department first challenges the district court's indigency standard. It points out that "[t]here is no established minimum requirement that a state must meet in order to provide indigent inmates with adequate access to the courts. Instead, a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987);

---

**2.** When core *Bounds* requirements, such as an allegation of a denial of legal supplies, are not at issue, we must consider whether the plaintiff has alleged an "actual injury" to court access. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *see also Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990). Only if an actual injury is alleged has the plaintiff stated a claim for which relief may be granted. *Sands*, 886 F.2d at 1171. "An 'actual injury' consists of some specific "'instance in which an inmate was actually denied access to the courts."'" *Id.* (quoting *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982) (quoting *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir.1982) (en banc))).

The inmates have satisfied this requirement, as they have alleged in their uncontroverted statement of facts that "[n]on-indigent inmates without funds have cases that go unfiled or have been dismissed due to the high cost of postage, legal copies, and legal supplies."

**3.** The district court did not "refuse[ ] to consider defendants' opposing 'class' definition," as the Department asserts. The district court not only "considered" the defendant's proposed definition, but also issued a three page order explaining why it was rejecting the defendant's objections to plaintiff's proposed definition.

*accord Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir.1989). However, the district court's determination that $46 is an appropriate standard *was* based on the needs of the particular class of plaintiffs in this case: it adopted the Special Master's report, based on interviews with Central Unit inmates and a questionnaire distributed to Central Unit inmates.

 Next, the Department objects to being ordered to furnish a minimum number of supplies. While the Constitution does not require any particular number of pens or sheets of paper, it does require *some.* *See Bounds,* 430 U.S. at 817, 97 S.Ct. at 1491. The district court acted within its discretion when it concluded that numerical minimums are the best way to ensure that indigent inmates get the required pens and paper. Similarly, the district court acted within its discretion in requiring minimum numbers of envelopes because some envelopes are necessary to send documents to the court.

 The Department specifically objects to the requirement that it provide typing supplies, file folders, and brief covers and bindings, on the ground that no prisoner could require them for meaningful access. *See Sands,* 886 F.2d at 1169; *Lindquist,* 776 F.2d at 858. Simply because the Constitution does not require such items to be provided does not mean that it is inappropriate to order them in the course of fashioning a remedy. *See Toussaint,* 801 F.2d at 1087. The district court's injunction is properly limited to the purpose of ensuring that inmates are able to conduct legal research and file actions in court. It is within the district court's discretion to determine an appropriate means, in light of the Department's and the inmates' needs, for providing inmates with the opportunity to conduct legal research and file court actions. We cannot say that

the district court abused its discretion in determining that providing file folders may be necessary for effective legal research or that providing typing supplies and brief covers and bindings (as opposed to more pens and paper for handwritten briefs) is a reasonable way to ensure that inmates can communicate with the courts.[4]

The Department's objection to postage for legal mail sent to a "pro se opposing party" is without merit. The injunction only requires postage for *legal* mail and only for letters sent to an opposing *party,* not for every letter an inmate wants to send to another inmate.

 The Department challenges the injunction's photocopying requirement, arguing that inmates have no right to free and unlimited photocopying. *See Johnson v. Moore,* 948 F.2d 517, 521 (9th Cir.1991); *Sands,* 886 F.2d at 1169. The injunction does not provide for unlimited photocopying; rather, it is specifically limited to legal materials and to "the number of copies of a document required by the court, plus one copy for the opposing party and one for his records." Litigation necessarily requires some means of accurate duplication because the court and the parties need to refer to the same documents. Photocopying is a reasonable means of providing the necessary copies. *See Johnson v. Parke,* 642 F.2d 377, 380 (10th Cir.1981) (explaining that it would be "needlessly draconian" to require inmates to copy all documents by hand).

Nor is the injunction unclear, as the Department argues, about which documents are covered by its photocopying requirement. The injunction refers specifically to those documents described in Section II(B) of the court's April 25, 1990 order, which describes legal papers and documents as "petitions, complaints, answers, motions, affidavits, exhibits, memoranda and briefs,

---

4. We recognize that these items may be somewhat remote from what is necessary for access to the courts, and we do not by any means suggest that such supplies are constitutionally required. However, "a federal court may order relief that the Constitution would not of its own force initially require if such relief is necessary to remedy constitutional violations." *Toussaint,* 801 F.2d at 1087. The district court in this case was particularly well situated to evaluate the Department's history and position in the litigation; in the face of virtual default by the Department, it went the extra mile by appointing a special master to consider all relevant information about conditions at the prison and reasonable curative measures. We accordingly think it appropriate to defer to the trial judge's experience and careful evaluation.

including attachments and appendices, and materials needed for discovery and investigation, including interrogatories and freedom of information requests."

■ Finally, the Department raises several objections to the request and response procedures set out in the indigency injunction. These procedures fall squarely within the district court's discretion, and the Department has not shown that the district court abused its discretion in establishing them. Nothing in the injunction precludes the Department from checking the inmates' eligibility for supplies. While it might have been desirable to provide extra response time for holidays, the lack of such a provision is not so serious that it amounts to an abuse of discretion. The requirement of duplicate reports of denials of requests is a proper exercise of the district court's discretion because it helps ensure compliance with the injunction and is not overly burdensome.

B. Access injunction

■ The inmates contend that all of the Department's claims relating to access have been abandoned because the Department failed to make them in its appeal from the access injunction (No. 90–15735) and are not properly included in the appeal in case No. 16593 because it is an appeal only from the indigency injunction. The Department should have raised all of its arguments regarding access in its appeal from the April order because that portion of the case was closed when the district court issued its partial final judgment. Nevertheless, as a practical matter, we see no reason to bar the Department from raising access issues in this appeal. The two appeals are now before us and are being decided together so that the only distinction left between them is that the arguments are contained in different briefs. *Cf. Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir.1980) (giving finality rule "a practical rather than a technical construction").

The Department objects to the ten hour minimum for law library time each week, the minimum two hour law library turnouts, and the inmates' opportunity to select their turnouts. The Department waived any objections to the ten hour minimum and the two hour turnouts. In its "Response to Special Master's Proposed Order," it stated that "[t]he requirement of *ten (10) hours minimum of actual law library use each week is basically reasonable*," and that it had "no objection to a 'minimum of two hours of actual library use' at each library turnout." [5]

■ The Department did properly preserve its objection to inmates selecting library turnouts, but its objection is meritless. Simply allowing inmates to request their preferred time slots does not deprive the Department of any authority over scheduling.

■ Finally, the Department challenges the district court's imposition of a training program for inmate legal assistants. *Bounds* requires, in the absence of adequate law libraries, "some degree of professional or quasi-professional legal assistance to prisoners." 430 U.S. at 831, 97 S.Ct. at 1500. Although legal training need not be extensive, *see Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990); *Lindquist*, 776 F.2d at 857, *Bounds* does require that inmates be provided the legal assistance of persons with at least some training in the law, 430 U.S. at 828, 97 S.Ct. at 1498.

We cannot say that the district court abused its discretion in choosing an inmate training course to provide the requisite legal assistance. *Bounds* specifically mentions "the training of inmates as paralegal assistants to work under lawyers' supervision," as one way of providing adequate assistance. *Id.* at 830, 97 S.Ct. at 1499. Inmate paralegal training is, of course, not the only way to provide adequate legal assistance, *id.* at 832, 97 S.Ct. at 1500, but it was not unreasonable for the district

---

**5.** The Department maintains that it preserved all objections by objecting to the necessity of an injunction at all. The argument in this appeal, however, is about the *scope* of the injunction, not the propriety of its imposition in the first place. Thus, the Department's preservation of its objection as to liability is irrelevant to the question of whether it has preserved its objections to the scope of the injunction.

court to choose this alternative, especially in light of the Special Master's conclusion that the Department could implement a training course at little cost.

### V. Conclusion

The district court's rulings on both summary judgment motions, the class certification issues, and the scope of the injunctive relief ordered are affirmed in all respects.

In both appeals, the inmates have requested attorney's fees on appeal under 42 U.S.C. § 1988. Section 1988 allows us, in our discretion, to award such fees to a prevailing party. We believe an award of fees is appropriate in this case and therefore grant the inmates' request. The inmates shall submit a bill of costs to the Clerk within thirty (30) days.

AFFIRMED.