996 F.2d 1223
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul L. BROWNING, Plaintiff-Appellant,
v.
Gordon F. YACH; John Moran; Joseph K. Evers, Defendants-Appellees.
 No. 92-15130.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 14, 1993.*
Decided June 24, 1993.
 
 1
 Before: GOODWIN, NORRIS, and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Paul L. Browning, a former inmate of Clark County Detention Center ("CCDC"), appeals pro se from the judgment of the district court following a bench trial, in his civil rights action brought under 42 U.S.C. § 1983 challenging certain conditions of his confinement. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 4
 * We review questions of law de novo. Anderson v. United States, 966 F.2d 487, 491 (9th Cir.1992). A district court's findings of fact are reviewed under the clearly erroneous standard. Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). A trial judge's decision whether to award costs is reviewed for an abuse of discretion. Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir.1988).
 
 II
 A. Discontinuation of Medication
 
 5
 Browning argues that the district court incorrectly held that prison medical officials' brief discontinuation of his medication on two occasions did not constitute "deliberate indifference to [Browning's] serious medical needs" in violation of the Eighth Amendment. Browning maintains that the two charges of "palming" (i.e. not taking or making unauthorized use of medication), which led to the suspension of his medication, were pretextual, and that his medication was cut off to punish him for pursuing legal action against prison officials.
 
 
 6
 Browning's argument is without merit. CCDC medical personnel were twice informed, approximately on August 23, 1986 and September 15, 1986, that Browning was "palming" his medication. The district court found that "Dr. Gregory, independent of any action taken by the defendants or their subordinates, made the determination that the medication should be discontinued." In each case, Browning was examined promptly by Dr. Gregory, and his medication was restored within three days. The court emphasized that the "final decision with respect to whether or not the medication should be discontinued was that of Dr. Gregory's. The defendants had absolutely no input in connection with that and are not responsible in any way for the discontinuation of the medication." Browning points to no evidence which indicates that the brief deprivations of his hypertension medication were potentially life threatening, or which contradicts the district court's finding that even if Dr. Gregory acted improperly "there was no harm to [Browning]." Thus, the district court's factual findings were not clear error.
 
 
 7
 Browning further argues that the district court abused its discretion by disallowing Browning's attempt to present evidence impeaching the testimony of Officer Fricker, the author of a memorandum reporting Browning's "palming" of his medication. Browning unsuccessfully tried to introduce the affidavits of two fellow inmates which purportedly detailed Officer Fricker's efforts to obtain damaging information about Browning that would "help" to justify the suspension of Browning's medication. Browning's argument fails; any abuse of discretion is harmless.
 
 B. Access to Court
 
 8
 The district court determined that the CCDC library policy, which specifically barred inmates' access to legal materials not relevant to their criminal matters, violated Browning's constitutional rights. However, finding that Browning failed to establish any actual damages as a result of the CCDC's unconstitutional limitation on the use of civil research materials, the court assessed only nominal damages ($1.00) against Yach and Evers.
 
 
 9
 Browning contends that the district court's finding that he suffered no actual injury was clear error. Browning argues that the denial of access to civil related materials is itself an actual injury and, in any event, that damages were in order due to the psychological harm that he suffered. Browning's argument is without merit. The cases cited by Browning do not compel the conclusion that the constitutional deprivation to which Browning was subject constitutes actual injury as a matter of law. Moreover, there was no finding of compensable psychological injury.
 
 
 10
 In addition, Browning claims that the district court's finding that his access to the courts was not meaningfully impeded was clear error. Specifically, Browning maintains that substantial evidence in the record indicates that immediately after he questioned a prison rule concerning prisoner access to "civil related" materials, he was transferred to a section of the prison whose residents were not afforded library privileges. Subsequently, following the issuance of a state court order guaranteeing Browning's right to attend the prison library, Browning contends that prison officials interfered with his legal mail, read through his legal materials, subjected him to harassment during his library time, and confiscated numerous documents he had procured from the defendants.
 
 
 11
 The district court found "nothing in the record that would suggest at all that [Browning] in any way has ever had his rights impaired in connection with filing a lawsuit. In fact, he's been able to file his lawsuit." Browning has not shown the requisite "actual injury" to court access within the time period covered by his complaint. See Gluth v. Kangas, 951 F.2d 1504, 1509 n. 2 (9th Cir.1991) (plaintiff must establish "actual injury" to court access; "actual injury" consists of some specific "instance in which an inmate was actually denied access to the courts").
 
 C. Punitive Damages
 
 12
 Asserting that the CCDC policy of disallowing inmates' civil related research in the prison library demonstrated wanton indifference to federally protected rights, Browning argues that the district court abused its discretion by dismissing his claim for punitive damages. Browning notes that punitive damages may be assessed "under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Browning points to no evidence in the record which establishes that Evers and Yach possessed the requisite mental state to support the award of punitive damages.
 
 D. Procedural Due Process
 
 13
 Browning claims that the district court's finding that he waived any objection to not receiving proper notice of the September 12 hearing before the Conduct Adjustment Board ("CAB") was clear error, and thus, that his hearing failed to comport with the requirements of procedural due process. While Browning points to his trial testimony that he did request a continuance based on the fact that he had just received notice of the CAB hearing a few hours earlier, Barry Payne, the officer conducting the hearing, stated that he did not recall that such a request was made.[1] Payne further testified that had an inmate informed him that he had received insufficient notice, he would likely ask if the inmate wished to postpone the hearing. The district court's finding that Payne was the more credible witness was not clear error.
 
 
 14
 Browning also contests the district court's finding that the hearing officer was impartial. The district court's finding of impartiality was not clear error. Browning points to no evidence indicating that he was treated unfairly at the CAB disciplinary proceedings.
 
 
 15
 Further, Browning contends that he was repeatedly "locked down" (i.e. placed in administrative segregation) for 24 hour intervals whenever a particular officer felt the need to do so. Browning maintains that this amounted to punitive confinement, and in these instances, that he was deprived of his right to a hearing.
 
 
 16
 Browning's argument is without merit. Although he claims that he was punished "numerous" times, Browning identifies only two specific occasions on which he was disciplined without the benefit of a prior hearing. Neither amounted to an unconstitutional deprivation of liberty. With respect to the first, Paul Martin, CCDC Director of Security, testified that Browning was moved from 5D to 5C (administrative segregation) without prior notice or a hearing because of reports that Browning was involved with two other inmates in a plot to escape. Martin stated that "to notify an inmate that he is being investigated because of a threat to escape could jeopardize the investigation and could harm the individuals we get the information from." Browning was notified later of the reason for the transfer and was returned to regular detention after the charges were investigated and proved unfounded. On the second occasion, Browning was denied his "free time for 1/10/86" based on Browning's threats directed to, and verbal harassment of, a prison officer.
 
 E. Fresh Air
 
 17
 Browning asserts that the district court's finding that he was not denied his constitutional right to fresh air was clear error.
 
 
 18
 Browning's argument is without merit. Spain v. Procunier, 600 F.2d 189 (9th Cir.1979), the case upon which Browning relies, explicitly refrained from holding that the deprivation of outdoor exercise is a per se violation of the Eighth Amendment. Id. at 199. In affirming the district court's finding that the denial of outdoor exercise to certain inmates was unconstitutional, the court stressed that "[o]ur ruling, and that of the district court, applies to these plaintiffs who were assigned to the AC [and thus deprived of outdoor privileges] for [more than four] years." Id. (emphasis added). Here, Browning's assignment to 5C was temporary and for disciplinary purposes. Id. Moreover, even if the district court's finding of "no fresh air problem of constitutional magnitude" were determined to be clear error, Browning does not assert that he suffered any damage as a result of any unconstitutional deprivation to which he was subjected.
 
 F. Mail
 
 19
 During the pretrial telephonic conference, the parties and the district court agreed that the "mail issue" (i.e., Browning's contention that prison officials had illegally intercepted his incoming legal mail) would be tried by affidavit. On appeal, Browning first argues that the government's failure to file any opposition to his affidavits constitutes a default with respect to the mail issue. Browning's argument is without merit. The court stated that the government "may" file papers setting forth its position; there is no indication that a response by the government was required.
 
 
 20
 Browning further argues that the district court committed reversible error by allowing defense counsel, over Browning's objection, to raise the mail issue at trial. Browning claims that he relied on the district court's pretrial order, and thus was prejudiced because he was unprepared to discuss the issue.
 
 
 21
 The district court did not abuse its discretion in allowing the government to cross-examine Browning regarding the mail issue. Browning knew that the issue was to be decided at trial, and while the court indicated that affidavits would be the primary basis for its decision, the possibility that follow-up questioning would be permitted was never foreclosed. Moreover, it is difficult to see how Browning suffered any prejudice as a result of the district court's decision, since he does not dispute that his position was set forth fully and accurately in the affidavits which he submitted.
 
 
 22
 G. Inquiries about Browning's Pending Criminal Case
 
 
 23
 Browning argues that the district court clearly erred in finding that prison officials did not inquire about his then pending state criminal case. Browning's argument is without merit. While Evers's memorandum in response to Browning's grievance may conflict with Evers's trial testimony, it was not clear error for the district court to find Evers's unambiguous live testimony the more credible of the two. Moreover, Browning fails to contest the district court's finding that he suffered no injury as a result of any improper questioning. Browning never responded to any such requests, and no CCDC personnel testified at Browning's state trial.
 
 H. Amendment of Complaint
 
 24
 Browning argues that the district court abused its discretion in denying him leave to amend his complaint. Browning's argument is without merit. In an unpublished order, dated January 3, 1990, this court reversed the district court's sua sponte dismissal of Browning's complaint. After remand, the district court accepted Browning's original complaint and Browning proceeded to trial. Other than making general, conclusory statements that his original complaint lacked the "fine points necessary to perfect his claims," or that he was unable "to sufficiently develop issues the way that they were intended to be pled," Browning fails to explain satisfactorily how he was prejudiced at trial by the district court's refusal to grant him leave to amend.
 
 I. Discovery
 
 25
 Browning argues that the district court erred by not holding a hearing to resolve various discovery disputes. Specifically, Browning contends that the defendants failed to produce numerous key documents, produced documents which were illegible, responded late to his requests, and were generally uncooperative. Browning asserts that his inability to obtain full and timely discovery caused him serious prejudice in the presentation of his case at trial.
 
 
 26
 Browning's argument fails. While Browning filed several motions to compel discovery with the district court, and the record indicates that the parties to this suit did not cooperate as much as they might have, there is no indication that any problems with respect to discovery prejudiced Browning's case.
 
 J. Witnesses
 
 27
 Browning contends that he was prejudiced by the district court's refusal to allow him to call witnesses in the order that he had planned. Browning claims that his apparent acquiescence in the district judge's preferred trial format was the result of unfair pressure.[2]
 
 
 28
 Browning's argument is without merit. Browning never objected to the district court's ordering of his trial witnesses. Further, Browning is unable to show that prejudice resulted from his claimed inability to present witnesses in the order which he had planned.
 
 
 29
 Browning further argues that the district court improperly relied on defense counsel to procure each of Browning's witnesses for trial, instead of issuing subpoenas. Specifically, Browning claims that he was prejudiced by the fact that defense counsel did not contact CCDC nurse Donna Taylor.
 
 
 30
 Browning's argument fails. Browning did not object to the district court's instruction to defense counsel during the pretrial conference regarding the procurement of witnesses. Moreover, there is no evidence in the record as to whether Taylor was even available to appear at trial. Finally, Browning was not prejudiced. The substance of Nurse Taylor's testimony was covered by the Potter Affidavit, admitted into evidence.
 
 K. Dismissal of Defendant John Moran
 
 31
 Browning argues that the district court improperly granted summary judgment in favor of defendant John Moran. Browning claims that Moran, the Sheriff in charge of the Las Vegas Metropolitan Police Department, knew or should have known of his subordinates' unconstitutional practices--i.e., the library policy forbidding inmate use of civil materials--and thus, failed to protect the rights of inmates in his custody. Browning also contends that Moran failed to train properly the officers for whom he was responsible.
 
 
 32
 Browning's argument fails. Browning's complaint listed Moran simply as the director of the CCDC and did not allege any wrongdoing on his part.
 
 L. Denial of Costs
 
 33
 Finding that he did not prevail on the central issue of his case and that he failed to demonstrate the basis for his claim of entitlement to costs, the district court denied Browning's application for $2,000 in "out of pocket" costs. Browning maintains that the district court's failure to award him costs pursuant to Fed.R.Civ.P. 54(d) was an abuse of discretion. Browning argues that his challenge to the CCDC's restrictions on inmate access to civil related legal materials (the issue on which he prevailed), was the central issue and the "catalyst" for bringing his suit.
 
 
 34
 The district court's failure to award costs to Browning was not an abuse of discretion. The district court's refusal to award costs was permissibly based on the lack of documentation with respect to Browning's claimed costs and the fact that Browning "prevailed on only one of six claims in this action and was awarded nominal damages since he failed to establish any actual damages as a consequence of the library policy."
 
 
 35
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Browning testified that he never was provided with a handbook containing the hearing rules and procedures so he had no idea that a continuance request was possible. Browning testified that when he asked, he was told that the only available copy of the inmate handbook was posted on the unit wall by the telephone. Browning stated that when he checked this copy, he discovered that most of it was missing. While the district court made no specific finding with respect to Browning's access to the inmate handbook, the court did find that Browning was "aware of" his rights and "waiv[ed]" them
 
 
 [2]
 Browning also claims that he was prejudiced by the presence of Evers and Yach in the courtroom during the testimony of other prison officers, because Evers and Yach "were able to absorb all this testimony and adjust their own testimony accordingly." Browning, however, fails to offer specific examples of "adjusted testimony" or perjury