Alvin Howard CANELL, Plaintiff,

v.

Ris BRADSHAW (Sheriff), Clackamas County; Preston Beebe; Lt. Warner Johnson; Nurse Sue Doe; Frank Hall; Denis Dowd, In official and individual capacities, Defendants.

No. CV 93–741–PA.

United States District Court,
D. Oregon.

Nov. 23, 1993.

Alvin H. Canell, pro se.

Miles A. Ward, Asst. County Counsel, Oregon City, OR, for Clackamas County defendants.

Theodore R. Kulongoski, Atty. Gen., Jan Peter Londahl, Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants Preston Beebe, Frank Hall and Denis Dowd.

## OPINION

PANNER, District Judge.

Plaintiff Alvin Canell brings this 42 U.S.C. § 1983 action against Sheriff Ris Bradshaw, Preston Beebe, Lt. Warner Johnson, "Nurse Sue", Frank Hall, and Denis Dowd, in their individual and official capacities, and Clackamas County. The amended complaint asserts eight claims for denial of access to the courts, and one claim alleging cruel and unusual punishment. Defendants move to dismiss (or for summary judgment) on grounds the claims are barred by qualified immunity, and because plaintiff has not stated a claim entitling him to relief. I dismiss some claims, and set the remainder for trial.

## BACKGROUND

The Oregon Department of Corrections ("ODC") has contracted with Clackamas County ("County") to provide services to inmates housed at the Oregon Department of Corrections Intake Center ("OCIC"), which is adjacent to the Clackamas County Jail in Oregon City, Oregon. Approximately 200 inmates are housed at OCIC at any one time. The purpose of the OCIC is to conduct an initial assessment and classification of inmates in order to determine the ODC institution to which the inmate will ultimately be sent to serve the balance of his or her sentence. The record does not reflect the medi-

an or maximum duration of confinement at OCIC, but it is measured in weeks, rather than months or years. Many inmates have already spent a "considerable amount of time" in the County jail prior to their arrival at OCIC.

Plaintiff Alvin Canell was incarcerated at the OCIC from May 17, 1993 to June 8, 1993 when he was transferred to the Oregon State Penitentiary ("OSP"). Defendant Preston Beebe is employed by the ODC as Assistant Manager of the OCIC. Defendant Warner Johnson is a Lieutenant at the OCIC who plaintiff alleges was in a position to grant the relief he had sought. "Nurse Sue" Doe is a nurse at the OCIC whose full name is not known to plaintiff. Defendant Frank Hall is Director of the ODC. Denis Dowd is employed by ODC as Assistant Director of the Institutions Branch.

Plaintiff asserts that at the time of his incarceration at the OCIC he was "very active" in the courts and had several cases either pending or "needing to be filed." One of those cases was a § 1983 action against former Clackamas County Sheriff Bill Brooks ("*Brooks*") alleging unsanitary conditions at the Clackamas County Jail. While plaintiff was incarcerated at OCIC, the Clackamas County Counsel filed a motion for summary judgment in *Brooks*, "expedited consideration requested." Plaintiff asserts he was unable to conduct any legal research on *Brooks* or his other cases because defendants had no Supreme Court Reporters, Federal Reporters, Federal Supplements, or Federal Digests available. Plaintiff could file a written request to see a particular case, but this "paging system" was "next to useless" since without digests plaintiff had no way to determine which cases he needed. Moreover, it took time to obtain each case requested, and without ready access to casebooks, plaintiff "could not brouse (sic) in search of inspiration, creativity and ideas from other cases". Plaintiff avers that even when he did request cases, they were not always provided.

Plaintiff also alleges that defendants denied him access to the courts by not furnishing supplies needed to prepare legal documents for filing. Plaintiff was denied use of

a typewriter or pen. He was provided with a 2–inch "golf pencil", but says he had great difficulty using this short pencil because he has carpal tunnel syndrome. Defendants also refused him permission to photocopy documents, including exhibits to be submitted to the court in response to a motion for summary judgment.

Plaintiff's ninth claim alleges denial of adequate medical treatment. While plaintiff was at the OCIC he lost a dental filling. On June 6, he requested medical attention. On June 7, he was examined by "Nurse Sue", who allegedly offered plaintiff some Motrin (an over-the-counter pain reliever) but advised that further dental care would not be provided until plaintiff had been sent to another institution at some uncertain date in the future. Plaintiff was transferred to the OSP on June 8. Plaintiff contends he was in "severe pain and agony", and that Nurse Sue saw "the large hole" in his tooth, "the tears, and the swollen gums", but still refused to permit plaintiff to see a dentist. Plaintiff contends Nurse Sue acted with deliberate indifference. He also argues that defendants had a duty to see that such decisions are made by qualified personnel, not a nurse with no training in dentistry.

## STANDARDS

■ Public officials may not be held personally liable for violating a person's constitutional rights unless the right violated was sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The very conduct in question need not have been previously held unlawful, but the unlawfulness must be apparent in the light of pre-existing law. *Id.*

■ The threshold determination of whether the law governing the conduct at issue is clearly established, and whether a reasonable official could have believed his conduct was lawful in light of clearly established legal principles, is a question of law for the court. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993). Whether a clearly established right has been violated requires an initial examination of the prece-

dent of the Ninth Circuit and the Supreme Court. *Kirpatrick v. City of Los Angeles*, 803 F.2d 485, 490 (9th Cir.1986). In the absence of binding precedent, the trial court may look to other decisional law. *Id.* Accord *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1049 (8th Cir.1989). If the trial court examines decisions from other courts, the likelihood that the Ninth Circuit or Supreme Court would adopt that analysis is an added consideration. *Id.* Government officials are not charged with predicting the future course of constitutional law. *Ostlund v. Bobb*, 825 F.2d 1371, 1374 (9th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Nor are government officials held to the standards of legal scholarship normally associated with law professors and academicians. *Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

■ As with any motion for summary judgment, evidence and the inferences therefrom must be viewed in a light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 630–31 (9th Cir.1987).

## DISCUSSION

1. *Violation of State Regulations or Equal Protection:*

■ Plaintiff contends the ODC violated its own regulations, which require that all inmates be given access to a law library and adequate legal supplies. Section 1983 affords redress only for violation of rights guaranteed by federal law. Violations of state law or regulations are not cognizable under § 1983. *Canell v. Oregon Dept. of Justice*, 811 F.Supp. 546, 550 (D.Or.1993). Plaintiff's equal protection claim also fails. Plaintiff does not allege that he was personally singled out for disparate treatment, but merely that inmates at the OCIC were afforded different privileges than inmates at other institutions operated by the ODC. The state is not required to implement identical rules at each prison, or to offer identical benefits to each inmate, so long as there is a rational basis for the distinction.

### 2. *Moot Claims:*

 Plaintiff seeks an order compelling defendants to provide certain services at the OCIC. Plaintiff is no longer housed at the OCIC, nor will he be detained there in the future unless he is again convicted of a crime in Oregon and sentenced to state prison. There is a narrow exception to the mootness principle for cases "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). Although this claim is inherently transitory, since defendants have asserted that no one inmate is ever held at the OCIC for more than 90 days at a time, I cannot assume plaintiff will again be incarcerated at OCIC in the near future. The claims for declaratory and injunctive relief are therefore moot. *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Johnson v. Moore,* 948 F.2d 517, 522 (9th Cir.1991).[1]

### 3. *Constitutional Right of Access to the Courts:*

 Prisoners have a constitutional right of access to the court. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). This right includes a "core" component encompassing access to knowledge of the law, and a secondary component encompassing the supplies and services needed to actually prepare and file court papers. *See Gluth v. Kangas,* 951 F.2d 1504, 1509 (9th Cir.1991).

#### A. *Liability of State Defendants:*

 The state defendants contend the contract between the ODC and Clackamas County makes the County solely liable for day-to-day operation of the OCIC. Defendants cite no law to support the novel proposition that a state may avoid its constitutional obligations to inmates by contracting with a third party to house those inmates. The only reported cases discussing this question are squarely to the contrary. *See Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir.1981) (state correction authorities may not avoid obligation to ensure access to the courts by transferring inmates to prison operated by another entity). *See also West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 2259, 101 L.Ed.2d 40 (1988) (contracting out prison medical care to a third party does not relieve a state of its constitutional duty to provide adequate medical treatment to those in its custody, nor are inmates precluded from bringing a § 1983 action against the state to vindicate those constitutional rights); *Harris v. Young,* 718 F.2d 620, 622 (4th Cir.1983) (state law expressly made Director of state prison system responsible for welfare of state prisoners housed in other jails, but court suggested it would have held the Director responsible even absent that statute).

Defendants' argument might be better taken had the contract obligated the County to provide a specified level of legal services and the County breached that contract. Instead, the contract did not even mention the County's obligation to provide inmates with legal services. I also note the complaint alleges a systematic denial of constitutional rights, rather than an isolated, unauthorized action by an individual employee at the OCIC.

The terms of the contract also counsel against the position advocated by the state defendants. The contract does make the County responsible for the day-to-day operation of the OCIC. However, the ODC retains significant control over the OCIC, including the right to "review the budget [and] make modifications as necessary". The state defendants presumably would have known the level of inmate legal services that were budgeted, and could have adjusted that level if they deemed it necessary. The final budget for each biennium must also be approved by the state Executive Department and State Emergency Board.

 The ODC also operates the inmate assessment and classification program through ODC employees assigned to the OCIC. Staffing requirements, operating policies and procedures are jointly determined by ODC and the County. The two agencies

---

1. The class action exception is inapplicable here. *Cf. County of Riverside v. McLaughlin,* 500 U.S. 44, ——, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 399, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980).

meet at least semi-annually to discuss operating issues and review procedures at the OCIC. ODC officials either knew, or should have known, the level of legal services that were being provided at the OCIC, and had ample opportunity and authority to adjust those levels.[2]

### B. Adequacy of Law Library:

■ Defendants contend a "paging system" provides adequate access to the courts. I disagree. The paging system, also known as an "exact-cite system" because an inmate must request materials by exact cite, has been condemned by courts throughout the country. *See Williams v. Leeke,* 584 F.2d 1336, 1339 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979); *Toussaint v. McCarthy,* 801 F.2d 1080, 1109–10 (9th Cir.1986) (paging system at San Quentin prison unconstitutional), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95

L.Ed.2d 871 (1987).[3] Indeed, this court previously held the paging system unconstitutional when it was used at the Umatilla County Jail. *See Martino v. Carey,* 563 F.Supp. 984, 1003–04 (D.Or.1983). By 1993, no reasonable public official would have believed a paging system was by itself sufficient to protect an inmate's fundamental constitutional right of access to the courts.

### C. Temporary Deprivation:

■ Defendants contend they are qualifiedly immune because there was no clearly established law holding that *Bounds* applies to "temporary" deprivations under the circumstances of this case. I disagree. The right of access to the courts is not limited to inmates serving long sentences at a state penitentiary. *Bounds* also reaches inmates temporarily housed at more transient institutions, such as a local city or county jail.[4]

---

**2.** Defendants are liable only for their own actions or omissions, since there is no respondeat superior liability under § 1983. *See Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). A supervisor can be held liable for implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Id.* (citing *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987)).

**3.** *See, e.g. Corgain v. Miller,* 708 F.2d 1241, 1250 (7th Cir.1983) ("exact cite" system is unconstitutional); *Caldwell v. Miller,* 790 F.2d 589, 605–607 (7th Cir.1986) (paging system alone would be constitutionally inadequate even for prisoners at Marion, the highest maximum security federal prison in the nation; but approving plan by which prison authorities provided a basic research/reference library containing sources such as digest that could be used to initiate research, and the specific cases or materials requested would then be provided within 24 hours); *Green v. Ferrell,* 801 F.2d 765, 772–73 (5th Cir.1986) (paging system inadequate); *Morrow v. Harwell,* 768 F.2d 619, 623 (5th Cir.1985) ("bookmobile system" which required inmates to order precise book in advance was inadequate); *Abdul–Akbar v. Watson,* 775 F.Supp. 735, 750 (D.Del.1991) (paging system is insufficient, unless supplemented by adequate reference materials or trained legal assistance), *order vacated on other grounds,* 4 F.3d 195, 205 (3d Cir.1993); *Griffin v. Coughlin,* 743 F.Supp. 1006, 1023–24 (N.D.N.Y.1990) (exact cite system alone is inadequate; must be supplemented by adequate reference materials and a basic library); *Williams v. Lane,* 646 F.Supp. 1379, 1389 (N.D.Ill.1986) (harshly criti-

cizing the paging system), *aff'd* 851 F.2d 867 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989); *Kaiser v. County of Sacramento,* 780 F.Supp. 1309, 1315–16 (E.D.Calif.1991) (paging system was adequate for pre-trial detainees because they also had access to court-appointed counsel plus informational packets provided by the state, but the paging system was inadequate for convicted prisoners held at the county jail).

**4.** *See Eldridge v. Block,* 832 F.2d 1132, 1138 (9th Cir.1987) (*Bounds,* applies to plaintiff being held temporarily in Los Angeles county jail pending extradition to Maryland); *Leeds v. Watson,* 630 F.2d 674, 676–77 (9th Cir.1980) (*Bounds* applies to pretrial detainees and convicted persons being held at the Kootenai County Jail, a converted house in Coeur d'Alene, Idaho); *Brown v. Manning,* 630 F.Supp. 391, 396–97 (E.D.Wash.1985) (it is clearly settled in the Ninth Circuit that *Bounds* applies to local jails, such as Spokane County Jail, and further holding that *Bounds* applies to any inmate incarcerated for more than 3 days); *Martino,* 563 F.Supp. at 1003–04 (D.Or.) (*Bounds* applies to inmates at Umatilla County Jail); *Parnell v. Waldrep,* 511 F.Supp. 764, 767–69 (W.D.N.C.1981) (detention of state prisoner at Gaston County Jail for 27 days without access to law library was unconstitutional); *Green v. Ferrell,* 801 F.2d 765, 772–73 (5th Cir.1986) (*Bounds* applies to inmates at Adams County Jail); *Harris,* 718 F.2d 620 (4th Cir.) (*Bounds* applies to state prisoner housed at county jail); *Johnson–El,* 878 F.2d at 1051–52 (8th Cir.) (*Bounds* applies to pretrial detainees held in a county jail); *Leeke,* 584 F.2d at 1340 (*Bounds* applies to prisoners at

Defendants offer no plausible reason why inmates at OCIC have less need for access to a law library than inmates at other institutions such as the County jail.[5] Nor do any of the recognized *de minimis* exceptions apply here. This is not a case where an inmate was inadvertently deprived of access to legal materials for a few days, and the situation was quickly rectified once discovered. *Cf. Vigliotto v. Terry*, 873 F.2d 1201, 1202–03 (9th Cir.1989) (three-day deprivation of inmate's legal materials); *Fort v. Reed*, 623 F.Supp. 1106, 1107 (D.Wash.1985) (inmate temporarily transferred to treatment center, but promptly returned to main prison after he advised prison officials that he needed access to a more complete law library than was available at the treatment center). Rather, the allegations here concern a *systematic* deprivation of access to the law library. Moreover, defendants allegedly knew plaintiff needed immediate access to the law library so he could respond to pending motions, yet still denied his requests. *Cf. Cookish v. Cunningham*, 787 F.2d 1, 5 (1st Cir. 1986) (two week denial of access to law library not unconstitutional during time inmate was quarantined on initial arrival, because he would have been permitted to use the law library had an emergency arisen).

Defendants have not pointed to any other *de minimis* exception that might apply here. Plaintiff was not briefly placed in segregation for disciplinary or security reasons. He was likewise not in a hospital or some other special unit away from the prison where it might be unreasonable to require access to a law library, or being lodged overnight at a motel while being transported to some distant prison. The OCIC is a 200–bed annex adjacent to the Clackamas County Jail, which is equipped with a law library. There is no excuse for not furnishing the OCIC with at least a basic law library (albeit not necessarily of the same caliber that might be found at facilities such as OSP), or permitting inmates to access the library at the Clackamas County Jail, or arranging adequate alternative means of providing inmates with legal assistance.

This case also presents special concerns because the timing of the deprivation coincided with the filing of a motion, *expedited consideration requested,* for summary judgment against plaintiff in a separate civil case involving plaintiff and Clackamas County jail. Plaintiff was denied access to the legal materials he needed to respond to that motion. A jury could ascribe bad faith to defendants' actions.

By 1993, the law was sufficiently clear that defendants should have known that systematic deprivation of access to legal materials under the circumstances of this case, which deprivation allegedly continued even after plaintiff made known his urgent need for research materials, violated plaintiff's fundamental constitutional right of access to the courts.

### D. *Lack of Harm:*

 Defendants assert that plaintiff obviously suffered no harm since he has continued to be a prolific litigator. That is not the standard in this circuit. When a "core" *Bounds* requirement is denied, there is no "actual injury" requirement. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989); *Gluth,*

Richmond City Jail); *Cruz v. Hauck*, 515 F.2d 322, 333 (5th Cir.1975) (*Bounds* extends to inmates at county jail, though district court need not be concerned with inmates staying for only two or three days before being transferred elsewhere, because they would not have enough time to file a petition), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976); *Morrow,* 768 F.2d at 624 (no hard and fast rule as to how long an inmate must be confined at county jail before *Bounds* applies).

**5.** The need for immediate access to a law library is heightened by an Oregon statute, ORS 138.-510, that establishes rigid deadlines for filing post-conviction challenges. A defendant who en-

ters a plea of guilty, and does not appeal, has only 120 days to uncover any defects in the proceedings or erroneous advice from his counsel, research the law, draft a petition, and file it. Thereafter, the inmate is forever barred from challenging the validity of the conviction or sentence. *See Daniels v. Wright,* 108 Or.App. 659, 816 P.2d 1191 (1991). It is therefore essential that an Oregon inmate have access to a law library during the first 120 days following his conviction. That need is not met if inmates are denied access to a law library during a stay at the OCIC that lasts three to four weeks, and perhaps longer if there is a week or two delay in obtaining access to the law library upon arrival at OSP, as plaintiff alleges.

951 F.2d at 1109.[6] In any event, "injury" includes petitions not filed, allegations left out of the complaint, legal theories not pursued, and cases not cited in the briefs that plaintiff did manage to file. *Harris,* 718 F.2d at 622. It is specious to argue that the plaintiff has suffered no injury because he continued to file complaints, or because he is unable to point to a case where judgment was actually entered against him for failing to timely file a pleading.

■ Plaintiff's affidavits sufficiently allege that his ability to conduct legal research, respond to pending motions, and file new cases was impaired. In fact, he missed the deadline for responding to summary judgment in *Brooks,* and judgment would have been entered against him had I not interceded to grant him an extension of time. He also alleges that one of his cases was dismissed as frivolous because he was unable to conduct proper legal research while at OCIC. I cannot say that the deprivation here is so speculative and trivial that it fails to rise to constitutional levels. *Cf. Vigliotto,* 873 F.2d at 1202–03. The difficulty in proving tangible harm is relevant to the issue of damages, but proof of quantifiable harm is not a prerequisite to stating a claim for denial of core *Bounds* rights. *Sands,* 886 F.2d at 1171; *Gluth,* 951 F.2d at 1109.

E. *Writing Tools:*

■ Prison authorities must provide indigent inmates at state expense with the supplies and services required for access to the courts, including paper and pen to draft legal documents, notarial services to authenticate those documents, and stamps with which to mail them. *Bounds,* 430 U.S. at 824–25, 97 S.Ct. at 1496–97. When secondary *Bounds* requirements are at issue, such as an allegation of a denial of legal supplies, the court must consider whether the plaintiff has alleged an "actual injury" to court access, i.e., some specific instance in which an inmate was actually denied access to the courts.

*Sands,* 886 F.2d at 1169–71; *Gluth,* 951 F.2d at 1509 n. 2.

■ Under ordinary circumstances, inmates have no constitutional right to use a typewriter. *Sands,* 886 F.2d at 1190. Security considerations may also justify the issuance of two-inch "golf" pencils. *See Jeffries v. Reed,* 631 F.Supp. 1212, 1215 (E.D.Wash.1986). A basic premise of these cases is that a typewriter or full-sized pen is merely a convenience. Here, plaintiff alleges that a medical condition prevented him from drafting court documents longhand using the 2–inch pencils provided. Under those circumstances, a full-sized writing instrument or typewriter might become an indispensable tool for communicating with the court. If prison officials knew of this problem, then their denial of plaintiff's request could constitute a deprivation of necessary legal supplies unless that action was justified by a sufficient penological interest.

Although plaintiff details his medical problems and inability to write with short pencils, neither the complaint nor affidavits in opposition to summary judgment allege that plaintiff ever told prison officials about this problem. One of the "kites" attached to plaintiff's affidavit states that plaintiff needs a pen because "affidavits must be in ink." The other kite requests "a pen to use if possible". If defendants were unaware of plaintiff's special medical needs, they cannot be faulted for failing to accommodate them. Plaintiff has also not alleged that defendants' actions resulted in a denial of access to the courts on a specific instance. Plaintiff has therefore failed to state a cognizable claim for denial of legal supplies.[7]

F. *Photocopying:*

■ Plaintiff alleges defendants refused to let him make any photocopies, not even of documents such as discovery exhibits that had to be provided to the court in duplicate (with copies to opposing counsel) and could

---

**6.** Not all circuits agree with the stance taken by the Ninth Circuit in *Sands. See Strickler v. Waters,* 989 F.2d 1375, 1383–85 (4th Cir.1993).

**7.** In his initial complaint, plaintiff alleged that he was limited to one two-inch pencil per week, regardless of need. It is difficult to imagine any set of circumstances that would justify such a rule. However, that allegation was omitted from the amended complaint, and is no longer part of this case.

not be replicated longhand. That allegation is supported by kites showing plaintiff requested copying services and was denied. Some of the documents were to be attached as exhibits to plaintiff's memo in opposition to summary judgment in *Brooks*. Plaintiff has therefore stated a *Bounds* claim for denial of supplies and services required to file court documents.

■ Defendants contend there was no clearly established law requiring them to provide photocopies. I disagree. *Bounds* requires prison officials to provide inmates with those supplies and services that are indispensable for filing court documents. Examples of those services include pen, paper, envelopes, stamps, and notarial services. *Bounds*, 430 U.S. at 824–25, 97 S.Ct. at 1496–97. Duplicating services were not expressly mentioned in *Bounds*, but the lower courts have recognized that photocopying can be an indispensable service when the plaintiff is obliged to provide copies of exhibits and other original documents to the court and opposing counsel. *See Gluth*, 951 F.2d at 1510; *Abdul–Akbar*, 775 F.Supp. at 740–41, 751, *order vacated on other grounds*, 4 F.3d 195, 205 (3d Cir.1993). Under those circumstances, hand copying is more than just draconian, *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir.1981) ("*Parke*"), it is impossible.

Defendants' reliance upon *Johnson v. Moore*, 948 F.2d 517, is misplaced. *Johnson v. Moore* stands for the proposition that there is no constitutional right to *unlimited free* photocopying. *Id.* at 521. The *Johnson* court did not hold that prison officials were *never* obliged to provide photocopying services for inmates. On the contrary, the *Johnson* court treated the denial of photocopying services as the equivalent of any other *Bounds* claim for denial of supplies and services which prison officials must provide when required to accommodate the inmate's right of access to the courts. *Id.* Johnson's claim was denied, not because there is no constitutional right to photocopying of court documents that cannot otherwise be duplicated, but rather because he had "failed to demonstrate the actual injury to access necessary to establish a constitutional deprivation" for non-core *Bounds* requirements. *Id.*

The court noted that Johnson had not explained how he was injured by the denial of photocopying services, why carbon paper was inadequate, or that the defendant was even responsible for the denial of photocopying services. *Id.* The court also noted that paid photocopying services were available. *Id.* *Johnson* therefore supports plaintiff's contention that he had a clearly established right to photocopying under certain limited circumstances. *See also Harrell v. Keohane*, 621 F.2d 1059 (10th Cir.1980) (no right to unlimited free photocopying where there were suitable alternatives); *Parke*, 642 F.2d at 380 (allowing inmates to pay for and receive photocopies of the legal materials required by the courts is part of the. meaningful access to the courts to which inmates are constitutionally entitled under *Bounds*).

■ I will allow this claim to proceed to trial, but caution plaintiff that mere general allegations will not suffice. To prevail, plaintiff must demonstrate that he wanted to copy specific documents which could not be duplicated longhand, that those documents were to be filed with the court as part of a specific memorandum or other document, that he advised OCIC officials of this need and his request was denied either by or in accordance with a policy promulgated by the defendants, that those documents were relevant and necessary to the particular case and had to be omitted from the filing as a consequence of the refusal to provide photocopying services.

### 3. *Cruel and Unusual Punishment:*

In view of the liberal construction customarily given *pro se* complaints, I construe the allegations as asserting an Eighth Amendment claim against "Nurse Sue" for deliberate indifference in refusing to refer plaintiff to a qualified doctor or dentist, and a similar claim against the other defendants for allowing a nurse to determine whether an inmate should be seen by a doctor or dentist, for not ensuring that qualified health care personnel were present, and for establishing a policy of indiscriminately deferring medical care until after the inmate has been transferred to a more permanent location.

An inmate must rely on prison authorities to treat his medical needs. The government therefore has an obligation to provide medical care for those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. *Id.*, 429 U.S. at 104, 97 S.Ct. at 291. Mere negligence or malpractice does not. *Id.*, 429 U.S. at 105, 97 S.Ct. at 291.

Defendants argue that a missing filling is not a serious medical or dental need, and further assert that a delay in medical treatment does not constitute an Eighth amendment violation unless the delay causes substantial harm. Defendants continue to labor under the fatal misconception that the Eighth Amendment duty to provide medical care is limited to conditions that are life-threatening or will cause permanent disability. In fact, the duty also applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290. Defendants' crabbed view of the Eighth Amendment was also rebuffed in a slightly different context in *Hudson v. McMillian*, — U.S. —, —, — —, 112 S.Ct. 995, 1000, 1002–4, 117 L.Ed.2d 156 (1992) (rejecting suggestion that no Eighth Amendment violation occurs, regardless of the amount of pain inflicted or the evil motives of the responsible prison official, unless the pain is accompanied by significant medical injury). *See also Wood v. Housewright*, 900 F.2d 1332 (9th Cir.1990) (divided panel, with two judges holding prisoner had stated an Eighth Amendment claim for pain inflicted by delay in treating injury, though dismissing the claim on other grounds); *Hunt v. Dental Dept.*, 865 F.2d 198 (9th Cir.1989) (delay in

providing prisoner with replacement dentures); *Fields v. Gander*, 734 F.2d 1313 (8th Cir.1984) (inmate suffering severe pain from infected tooth).

Defendants categorically dismiss the idea that a missing filling could cause great pain, but offer no medical testimony to support such a sweeping generalization. The severity of pain undoubtedly varies in each case, depending upon a number of factors. The need for treatment is a medical judgment that ought to be made by a qualified physician or dentist. *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir.1991).

Defendants have not submitted an affidavit from the nurse who treated plaintiff.[8] I therefore have only plaintiff's uncontroverted account of this event. Defendants contend there was no harm done, since plaintiff was transferred to OSP on June 8, where he received appropriate dental treatment.[9] I disagree. Defendants have offered no explanation for why plaintiff was made to wait until after he was transferred to OSP to receive medical care for pain that was allegedly so severe that plaintiff was in tears. Defendants have also not shown the nurse knew when defendant would be transferred to OSP. Plaintiff has alleged a *prima facie* case for denial of medical care resulting in the infliction of unnecessary pain and suffering without legitimate penological justification.[10] *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290.

Defendants have also failed to controvert plaintiff's contentions regarding policies, procedures, training, and supervision. Defendants have not asserted that the nurse acted contrary to their policies. Defendants have also not furnished any evidence regarding the training of this nurse, whether she was qualified to make the decision to not

---

8. Although the nurse is identified only as "Nurse Sue" in the pleadings, defendants could easily ascertain the identity of the nurse who treated plaintiff by checking the medical records at the OCIC.

9. The record does not reflect the date plaintiff received dental treatment at OSP. Defendants' brief is equivocal, referring to "a two day delay— or however long it took to obtain care at OSP". State Defendants' Memorandum at 10.

10. Plaintiff cannot obtain a judgment against "Nurse Sue." If through discovery plaintiff is able to learn the full name of the nurse who treated him, he may substitute her as a defendant, and serve her with a copy of the complaint in accordance with the Federal Rules of Civil Procedure.

refer plaintiff for further treatment, the level of supervision under which she worked, or the policies that guided her decisions. Access to medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.1982). Defendants have not shown they acted in a manner that a reasonable official would believe was consistent with plaintiff's clearly established rights. They have failed to establish their defense of qualified immunity.

## CONCLUSION

State defendants' motion (# 17) for summary judgment and county defendants' motion (# 33) to dismiss are granted in part and denied in part. I dismiss the claims for violation of state regulations and Equal Protection, and the claims premised on defendants' failure to provide a typewriter or pen. The prayer for declaratory and injunctive relief is moot. The remaining claims will proceed to trial. The stay (# 39) upon discovery is dissolved. I will issue a separate order establishing deadlines for discovery and a trial schedule.